**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Harold JOHNSON and Hugh Don
Smith, Defendants-Appellants.**

No. 72–2477

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 17, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Andrew A. Smith, Atlanta, Ga. (Court-appointed), for Joseph Harold Johnson.

Henry Gonzalez, Tampa, Fla., for Hugh Don Smith.

Robert L. Smith, Asst. U. S. Atty., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BELL, GODBOLD and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Hugh Don Smith and Joseph Harold ("Butterball") Johnson appeal from their conviction by a jury of violating 18 U.S.C. § 472[1] in connection with the passing of counterfeit Federal Reserve notes. We affirm Smith's conviction but reverse and remand for a new trial as to Johnson.

---

1. This statute provides:

"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

■ Smith's appeal is based on the sole contention that there was insufficient evidence for the jury to conclude that he passed the admittedly counterfeit money with the requisite intent to defraud. We decline to elaborate on this contention other than to say that we have read the record of his one and one-half day trial and find more than ample evidence to support the jury verdict, even apart from the rule that we must view the evidence in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). *See* Local Rule 21.

Appellant Johnson argues that the trial court erred in denying his motion for a severance, made and denied before trial, and renewed and again denied at trial; he also asserts that a mistrial should have been declared because the government prosecutor used a "birds of a feather" argument to the jury. We will discuss only the first of these claims.

Johnson timely filed his pre-trial motion for severance pursuant to F.R. Crim.P. 14.[2] This motion was denied.

■■ Whether to sever the trial of a defendant who has been properly joined, F.R.Crim.P. 8(a) and (b), for trial with other defendants is a matter within the sound discretion of the trial court. Opper v. United States, 348 U.S. 84, 75 S. Ct. 158, 99 L.Ed. 101 (1954); United States v. Harris, 458 F.2d 670 (5th Cir., 1972). A trial court's denial of severance will not be lightly overturned, and a defendant has an extremely difficult burden of showing on appeal that the lower court's action was an abuse of discretion. Tillman v. United States, 406 F.2d 930, 935 (5th Cir., 1969). *See* C. Wright, Federal Practice & Procedure, § 223 at 441–42 (1969). On the facts present in this case, however, the trial court abused its discretion.

■ A severance of Johnson's case was required when at trial it appeared, as Johnson's well-briefed pre-trial motion for severance had predicted, that he could not obtain a fair trial in a joint trial with Smith.[3] The pre-trial motion revealed that Johnson's theory of defense would be completely antagonistic to that of his co-defendant Smith; and

2. This rule provides:
"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial."

3. It is necessary at the outset to note the problems which this case does not present. We do not have a *Bruton* [Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1969)] situation because the co-defendant Smith was available for and was cross-examined. Nor do we face the problem encountered in Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), where the Supreme Court held that if a co-defendant takes the stand in his own defense, de-

nies making an out-of-court statement incriminating the other co-defendant, and testifies in the latter's favor, the co-defendant's right of confrontation was not violated. The rationale for this decision, as explained by Mr. Justice Stewart, is that "given a joint trial and common defense, Runnells' [O'Neil's co-defendant] testimony respecting his alleged out-of-court statement was more favorable to the respondent [O'Neil] than any that cross-examination by counsel could possibly have produced, had Runnells 'affirmed the statement as his.' It would be unrealistic in the extreme in the circumstances here presented to hold that the respondent was denied either the opportunity or the benefit of full and effective cross-examination of Runnells." *Id.* at 629, 91 S.Ct. at 1727.

Our case is not controlled by *O'Neil*. The textual discussion, *infra*, will show that Smith and Johnson did not have a common defense and that Smith did not repudiate his out-of-court statement—instead, he enthusiastically affirmed it. Smith's testimony cannot in any respect be characterized as favorable to Johnson.

Thus, *Bruton*, as clarified and explained by *O'Neil*, makes it plain that our reversal

furthermore, the motion pointed out that Smith had made a confession directly incriminating Johnson. Johnson's defense was that he was not present when the crime charged was committed. His guilt or innocence, therefore, depended on an absence of convincing identification testimony. Smith, however, took an altogether different approach in his defense. He did not deny passing the bills but contended that he did not pass them with the requisite intent to defraud. Indeed, Smith confessed to passing the bills on the day in question. His theory was that, because he was an informer for an Atlanta police detective and because White, the third person in this transaction, accepted the money with knowledge that it was counterfeit, he (Smith) was not criminally liable because he lacked the necessary *mens rea* to violate the statute.

As previously mentioned, Smith's confession directly incriminated Johnson and completely contradicted Johnson's theory of defense. In his confession Smith stated that Johnson was the person who was with him on the night that the bogus bills were passed to White. And almost equally as damaging, Smith said that Johnson was the procurer and original possessor of the counterfeit money. A copy of Smith's statement was, very appropriately, attached to Johnson's motion for severance. It was thus apparent prior to trial that there was a distinct probability that Johnson and Smith would offer conflicting and antagonistic theories of defense. While Smith would not be highly prejudiced in the presentation of his defense by Johnson's presence at trial, Smith's presence would cause definite hardship to Johnson as he endeavored to prove that he played no part in the crime and was not present when it was committed.

■ Any doubt as to whether the potential prejudice to Johnson—which, we repeat, was forecast in his pre-trial motion—would come to fruition was dissi-

pated at the trial. Although finding no prejudice from the joint trial in the case before it, the Supreme Court emphasized that in joint trials "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed. 2d 921 (1960). *See* Flores v. United States, 379 F.2d 905 (5th Cir. 1967); Byrd v. Wainwright, 428 F.2d 1017, fn. 1 at 1019 (5th Cir., 1970).

In his opening remarks to the jury Smith's attorney characterized Smith as a "white hat" government informer whose only purpose was to help lead law enforcement officers to the persons responsible for stealing and dealing in stolen unregistered firearms. Counsel described "Butterball" Johnson as having a "sack full of counterfeit money" and intimated that Smith, acting as his "own Dick Tracy," had a secondary goal of seeing that Johnson was apprehended for his activity with the counterfeit money. Counsel then commented on the transaction out of which the indictment arose and said that Johnson was present at the scene and was the one who had brought the bogus money to Smith. Smith's position was thus obvious: he was the good guy—only along for the ride—in order to see that criminals such as White and Johnson were removed from circulation.

After counsel closed, Johnson's attorney moved for a mistrial and renewed his motion for severance, pointing out that Smith's theory of defense was now clear and obviously prejudicial to his client. The motion was denied.

The district court was thus apprised before any testimony that Smith had given a confession directly incriminating Johnson, that there was no reason to expect that the government would not introduce this confession, that the theory of Smith's defense was *directly in conflict* with Johnson's, and that Smith had,

cannot rest on a violation of Johnson's constitutional right of confrontation. This conclusion does not answer the ques-

tion whether the trial court abused its discretion in denying a severance.

quite properly,[4] no qualms about casting Johnson as the major culprit in the counterfeit transaction.

Additionally, the accuracy of Johnson's pre-trial prediction of prejudice was further substantiated by the course of the trial. White, the seller of the unregistered firearms and receiver of the counterfeit money, testified that he believed it was "Butterball" Johnson who was present when the bills were passed to him. However, he related that it was dark when the transaction occurred, that he had neither met nor talked with Johnson for any length of time prior to the instant transaction, and that his identification was based on surmise—from Johnson's size as well as comments by Smith. Suffice to say that his testimony, while it would be enough to support Johnson's conviction, was clearly not sufficient to compel it. *See, e. g.,* Harrington v. California, 395 U.S. 250 (1969).

It is unnecessary to discuss in detail the remainder of the trial—a brief summary is sufficient. A study of the record reveals that Smith's attorney implicated Johnson at every opportunity. Moreover, Smith's confession was introduced with no deletions of the incriminating statements concerning Johnson.[5] When Smith took the stand, he affirmed his out-of-court statement and also took every available opportunity to further incriminate Johnson as a generally bad person and as the prime mover in the counterfeit transaction. In sum, Smith was the government's best witness against Johnson.

In Schaffer v. United States, 221 F.2d 17, 19 (5th Cir., 1955), this court recognized that the granting of a motion for severance is within the trial court's discretion, and that "what constitutes an abuse of discretion necessarily depends upon the facts in each particular case." The court also recognized that a severance was not required simply because one co-defendant had made a confession implicating the other.[6] The court held, however, that the lower court erred in not granting a severance.

"A careful study of the record in this case, however, leads us to the conclusion that the motion for severance should have been granted. Devenny and Schaffer were together throughout the transaction; both were present on every pertinent occasion. Schaffer's confession implicated Devenny and, while the trial judge eliminated from the confession the statement that 'I think that Devenny knew the property was stolen,' other parts of the confession clearly prejudiced Devenny in the eyes of the jury. The court, of course, properly instructed the jury to consider the confession as evidence against Schaffer alone, and to disregard it as evidence against Devenny. We believe, however, that the two defendants were so inseparably connected that the jury could hardly have been expected to return a verdict of guilty against one and of not guilty as to the other. There being only two defendants, it would not be very time consuming but entirely practicable to accord them separate trials. Like the Seventh Circuit in the case of United States v. Haupt, 136 F.2d 661, 672, 'We doubt if it was within the realm of possibility for this jury to limit its consideration of the damaging effect of such statements merely to the defendant against whom they were admitted.' We hold, therefore, that the court erred in denying the appellant Devenny a separate trial."

*Id.* at 19.[7]

---

4. *See* DeLuna v. United States, 308 F.2d 140 (5th Cir., 1962).

5. The deletion of the incriminating portions of a confession which implicates a co-defendant is frequently used to avoid error in this type of situation. *See,* United States v. Kershner, 432 F.2d 1066 (5th Cir., 1970) ; Posey v. United States, 416 F.2d 545 (5th Cir., 1969).

6. See note 5, *supra.*

7. That the rationale of *Schaffer* is still viable is illustrated by our recent opinion

Here, as in *Schaffer,* supra, there were only two defendants, and it would not have been very time consuming, but entirely practicable, to have accorded them separate trials. As was noted in United States v. Harris, 458 F.2d 670, 673 (5th Cir., 1972):

> "In weighing the competing factors under Rule 14 regarding severance, the trial court must evaluate the alleged factual and legal compactness of the consolidated trial and the government's interest in judicial economy with the potential prejudice to any of the defendants."

Johnson's motion for severance was made at least two months prior to trial and was renewed immediately after Smith's attorney's opening statement removed any doubt which could have been present concerning Smith's plan of defense. The posture of the case at the pre-trial stage would warrant the conclusion that no abuse of discretion occurred in the denial of Johnson's motion at that point. But as the trial progressed it became clear that the prejudice to Johnson of defending at a joint trial with Smith outweighed any possible disruption in the judicial process which would result from having separate trials.

 We hold that in the particular circumstances of this case the trial court abused its discretion in not granting a severance pursuant to its "continuing duty at all stages of the trial to grant a severance if prejudice does appear."

in United States v. Harris, 458 F.2d 670, 673 (5th Cir., 1970), where we said:
" . . . The trial judge in the instant case concluded that there would be no prejudice to the individual defendants resulting from consolidation, and we do not find he has abused his discretion by so concluding. This is not a case of one co-defendant confessing and implicating a fellow co-defendant by his confession, which might make it insurmountably difficult for a jury to render its decision regarding one co-defendant on the basis of his confession and yet to ignore that confession altogether when deliberating the fate of the second co-defendant."
[*Citing* Flores v. United States, 379 F.2d 905 (5th Cir., 1967); Belvin v. United

Schaffer v. United States, *supra,* 362 U. S. at 516, 80 S.Ct. at 948. Johnson has established "something more than the fact that 'a separate trial might offer him a better chance of acquittal.'" Tillman v. United States, supra, 406 F.2d at 935, *quoting* 8 Moore, Federal Practice ¶ 14.04[1], at 14–10, 11. He has demonstrated the "affirmative prejudice," United States v. Wilson, 451 F.2d 209 (5th Cir., 1971), necessary for a denial of severance to constitute an abuse of discretion.[8] We therefore reverse his conviction and remand for a new trial.

The Smith judgment is affirmed. The Johnson judgment is reversed and remanded.

States, 273 F.2d 583 (5th Cir., 1960, cert. denied 372 U.S. 922, 83 S.Ct. 737, 9 L.Ed. 2d 726 (1963); Barton v. United States, 263 F.2d 894 (5th Cir., 1969); Schaffer v. United States, 221 F.2d 17 (5th Cir. 1955); Wright, Proposed Changes in Federal Civil, Criminal, and Appellate Procedure, 35 F.R.D. 317 (1964).

8. Professor Wright phrases the standard for appellate review of a denial of severance as follows: "If the appellate court is left with a definite and firm conviction that a defendant *may have been prejudiced* by the refusal to give him relief from joinder, it must reverse the conviction." C. Wright, Federal Practice & Procedure, § 227 at 470 (1969) (emphasis added).