**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Norman CLARK, Howard Lewis Ellis,**
**Defendants-Appellants.**

**No. 72-3748**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 5, 1973.

* Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

robbed a federally insured bank in Conyers, Georgia on August 31, 1972. All four were indicted for bank robbery in violation of 18 U.S.C.A. § 2113(a). Burney and Buford pleaded guilty and agreed to testify for the prosecution. Clark and Ellis were convicted upon jury verdicts, and on this appeal they raise several issues, the principal one of which concerns the district court's refusal to grant Clark's motion for a severance. Finding each of their contentions to be without merit, we affirm.

Ellis first contends that the district court erred in admitting officer Moss's testimony regarding a statement made to him by Buford. Officer Moss encountered Buford shortly after the bank robbery took place and questioned him concerning his identity. According to Moss's testimony, Buford said, "I didn't have anything to do with the bank robbery but I brought them down here in my car." Moss then arrested Buford. Asked if Buford had made any further statement, Moss testified:

> I never did question him, except he says, "I have got a good job;" says, "I don't need to rob banks. I just brought them down here."

It is this second portion of Moss's testimony whose admissibility Ellis challenges on this appeal.[1]

Since Ellis did not object to the hearsay testimony at trial, its admission must be plain error affecting substantial rights to warrant reversal. Fed.R. Crim.P. 52(b). At trial the declarant Buford took the witness stand as a Government witness after Moss, and testified in detail concerning the content of the hearsay statement attributed to him. He was subject to cross-examination by appellant Ellis. Buford's availability for cross-examination concerning the statement cured what might otherwise be constitutional error under the Confrontation Clause. California v. Green, 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.

Tyrus R. Atkinson, Jr., Atlanta, Ga. (Court appointed for Clark).

Harvey A. Monroe, Jonesboro, Ga. (Court appointed for Ellis).

P. L. Wayman, Atlanta, Ga., for defendants-appellants.

John W. Stokes, Jr., U. S. Atty., Robert L. Smith, Anthony M. Arnold, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

The Government's evidence showed that Clark, Ellis, Burney, and Buford

---

1. Appellant Ellis does not explain in his brief why he challenges only the second quoted portion of Moss's testimony, which seems substantially identical to the first portion referred to in the text.

Ed.2d 489. In view of the large overlap between the hearsay rule and the Confrontation Clause and the similarity of values they serve, *id.* 399 U.S. at 156, 90 S.Ct. 1934, *Green* suggests further that any hearsay error was also cured by Buford's availability for cross-examination. In view of Buford's availability for full and effective cross-examination at trial, we conclude that even if there was a technical hearsay violation, it was harmless and did not rise to the level of plain error affecting substantial rights.

■ Ellis next argues that the verdict upon which he was convicted cannot stand because the district court failed to instruct the jury on an essential element of the crime—specifically, that the bank which he robbed must have been federally insured. The record, however, refutes this contention; it shows that the court in defining, "bank" followed the pertinent statutory language in 18 U.S.C.A. § 2113(f) and properly included in its definition "any bank the deposits of which are insured by the Federal Deposit Insurance Corporation."

Clark's principal argument centers on a letter written by his co-defendant Ellis which was used as a prior inconsistent statement to impeach Ellis and which also was damaging to Clark. Clark's defense was alibi. Reverend W. H. Harris testified that Clark was at his, Reverend Harris', home at the time of the robbery; Clark himself did not take the witness stand. Ellis did take the witness stand and testified that he had become accidentally involved in the robbery and that Clark was not one of the participants. On cross-examination, Ellis admitted that he had written Burney a letter while the four accused robbers were in jail awaiting trial, but he insisted he had not asked Burney to testify to an incorrect version of the facts. To impeach Ellis's testimony, the prosecution introduced a letter written by Ellis to Burney. Ellis admitted writing the letter. It contained the words, "when Norman [Clark] and I were sitting in the car." This language tended not only to impeach Ellis's testimony, but also to destroy Clark's alibi defense by placing him at the scene of the robbery.

■ Clark's first contention based on the letter is that the district court should have granted his pre-trial motion for severance, which he made for the purpose of avoiding the prejudicial effect of Ellis's letter in which he incorporated into a mistrial motion after the letter was introduced. Ruling on a motion for severance is a matter committed to the sound discretion of the trial court, and in order to obtain a reversal on a severance argument an appellant must carry the difficult burden of showing that the trial court abused its discretion in denying the severance. *See* Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101. "[W]hat constitutes an abuse of discretion necessarily depends upon the facts in each particular case." Schaffer v. United States, 5th Cir. 1955, 221 F.2d 17, 19. In the district court, appellant Clark's burden was to show that he would be unfairly prejudiced by being tried jointly with his co-defendant Ellis. If he made this showing in his pre-trial motion, the district court should have granted the severance or "whatever other relief justice requires." Fed.R.Crim. P. 14. Further, even after a trial begins as a joint one "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer v. United States, 1960, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921.

■■ As the basis of his severance argument appellant states only that the introduction into evidence of Ellis's letter "was very hurtful to Appellant's case since his defense was alibi." Undoubtedly this is true. But appellant has failed to articulate a basis for holding the prejudice which flowed from the letter was unfair or improper. The judicial administrative technique of severing trials of co-defendants is not intended to protect each defendant from all types of damage which might be done to his case in a joint trial. Whether at a joint trial or a separate trial, the prosecution is en-

titled to damage a defendant's position, or "prejudice" him, by presenting any evidence it can muster, so long as it does so within the bounds of the rules of evidence and propriety which are observed to assure that the trial is a fair one. Only the use of evidence or other conduct by the prosecution which prejudices a defendant in a joint trial unfairly or improperly, and whose improper effect may be avoided in separate trials, may warrant a severance. In this case, to show this type of prejudice, appellant Clark must demonstrate that the use of the letter at the joint trial was unfair as to him.

. At the outset we identify a problem which the impeaching letter in this case does not present. Frequently, the introduction of a defendant's extra-judicial statement or confession which implicates his non-confessing co-defendant gives rise to a confrontation problem because the confessing defendant, or declarant, does not choose to testify and is therefore not available for cross-examination by the implicated co-defendant. *See, e. g.*, Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; Barton v. United States, 5th Cir. 1959, 263 F.2d 894. This problem is not presented in this instant case, however, since Ellis, the writer of the letter, did take the stand and was subject to cross-examination by Clark. California v. Green, *supra*; *see* United States v. Johnson, 5th Cir. 1973, 478 F.2d 1129, 1131 n. 3. Although Ellis testified on direct that Clark was not present at the scene of the robbery and thus supported Clark's alibi defense, he admitted writing the letter when confronted with it on cross-examination by the Government. His availability for cross-examination by Clark was enough to afford Clark his Sixth Amendment confrontation right. *See also*, Nelson v. O'Neil,

1971, 402 U.S. 622, 91 S.Ct. 1723, 29 L. Ed.2d 222.

The circumstance that the letter was admitted for the limited purpose of impeachment arguably creates a different sort of extra-judicial-statement problem in this case. Clark might argue that if he had been tried separately, the Government probably would not have called Ellis as a witness because it probably would have anticipated that his testimony would be favorable to Clark. If Ellis were not produced for cross-examination admission of Ellis's letter would have been barred by the hearsay rule and the Confrontation Clause. If, on the other hand, Ellis were called by the Government, it would not be allowed under the traditional rule to impeach him as its own witness.[2] Thus, Clark might argue, the joint trial allowed the Government to circumvent—and unfairly denied Ellis the benefit of—the rule against impeaching one's own witness.

We cannot accept this argument. It is based on what might have been, not what actually occurred at trial. Actually, since Ellis was not in form or substance a Government witness at trial, the Government did not impeach its own witness. Further, since Ellis testified, Clark was not denied his rights under the Confrontation Clause or the hearsay rule. The circumstance that a separate trial might have offered Clark a strategic advantage over a joint trial does not suffice to demonstrate the unfairness of the joint trial. Assuming that the joint trial deprived Clark of the strategic benefit of the traditional rule against impeaching one's own witness, we do not believe that this denial rendered the trial unfair. Accordingly, we conclude that the district court did not abuse its discretion in denying the motion for a severance.

2. The continuing viability of the traditional rule forbidding a party to impeach his own witness is subject to doubt. It has been rejected in the Second Circuit, United States v. Freeman, 2d Cir. 1962, 302 F.2d 347, and expressly abandoned in the proposed Fed. Rules of Evidence 607. A well reasoned critique of the rule is found in C. McCormick, Evidence § 38 (2d ed. 1972).

Our conclusion is not altered by the recent case of United States v. Johnson, 5th Cir. 1973, 478 F.2d 1129, which held the trial court abused its discretion in denying a severance when the court knew "that Smith [the confessing defendant] had given a confession directly incriminating Johnson [the non-confessing co-defendant], that there was no reason to expect that the Government would not introduce this confession, that the theory of Smith's defense was directly in conflict with Johnson's, and that Smith had . . . no qualms about casting Johnson as the major culprit in the counterfeit transaction." *Id.* at 1132–1133. As in the instant case, there was no confrontation issue in *Johnson, id.* at 1131, n. 3, since the confessing defendant testified in his own defense. In *Johnson*, however, the defenses of the defendants were sharply antagonistic. The court concluded that in the circumstances of that case the antagonism between the defendants' positions was such that defendant Johnson "could not obtain a fair trial in a joint trial with Smith," *Id.* at 1131. In the instant case, by contrast, the co-defendants were not pitted against each other; rather Ellis's testimony tended to strengthen Clark's defense. Thus, the instant case is clearly distinguishable from *Johnson.*

Related to the severance argument is Clark's contention that the district court erred in failing to instruct the jury that Ellis's letter could be considered only for impeachment purposes. Since Clark made no corresponding objection at trial, our standard of review is the "plain error" standard of Fed.R.Crim.P. 52(b). Considering the jury instructions as a whole, and particularly those parts which specified that evidence admitted solely against one defendant could not be considered against the other, and considering Clark's opportunity to cross-examine Ellis, we find no plain error in the trial court's failure to give further limiting instructions.

Clark next argues that the district court erred in failing to instruct the jury on conspiracy. Since no conspiracy was charged, however, there was no error in the district court's omission of a conspiracy instruction.

Clark also challenges the failure of the district court to instruct on the uncertain credibility of accomplice testimony. While it is generally regarded as the better practice to warn the jury that accomplice testimony is considered unreliable, and while "the failure to give the warning may constitute reversible error in a close evidentiary situation," Davis v. United States, 5th Cir. 1969, 411 F.2d 1126, 1129, we do not believe the evidentiary questions were so close in this case as to require the cautionary instruction.

Lastly, Clark complains of the trial judge's failure to rebuke the prosecutor, when the latter argued to the jury that Clark's defense counsel had attempted "to pull the wool over twelve people's eyes" and made certain other remarks about Clark's defense counsel. Having carefully examined the record, we do not believe a rebuke was required and conclude that the trial court's failure to deliver one was not reversible error.

Accordingly, both convictions are affirmed.