UNITED STATES of America, Appellee,

v.

Robert DI GIOVANNI and Michael Sadowski, Appellants.

Nos. 154, 155, Dockets 76–1097, 76–1239.

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1976.

Decided Nov. 9, 1976.

Donald E. Nawi, New York City, for appellant Sadowski.

Richard W. Brewster, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E.D.N.Y., Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Joseph J. Lombardo, Brooklyn, N.Y., for appellant Di Giovanni.

Before ANDERSON, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

After a jury trial before Hon. Mark Costantino in the District Court for the Eastern District of New York, appellant Di Giovanni was convicted on December 4, 1975 on two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Following a second jury trial before Judge Costantino, appellants Di Giovanni and Sadowski were convicted on January 2, 1976, on one count of bank robbery in violation of 18 U.S.C. § 2113(d). Appellants appeal these convictions.

### The First Trial

In the first trial, Di Giovanni was convicted of robbing a branch of the Atlas Federal Savings and Loan Association on July 18, 1975, and a Chase Manhattan Bank branch on July 24, 1975. Before the trial, Di Giovanni's co-defendants, Grafman and Loskocinski, entered guilty pleas. At the trial, both testified as to Di Giovanni's involvement in the Atlas and Chase robberies. The Government also presented as a witness Irving Markson, a cellmate of Di Giovanni and Grafman at the West Street Detention Center. Markson testified to a discussion with his two cellmates about their bank robbing technique. He also related a separate conversation with Di Giovanni in which the appellant told Markson of spending part of his proceeds from the robberies on furnishing an apartment to impress a girl.

On the third day of trial, the prosecutor informed defense counsel that it would offer testimony concerning statements made by Di Giovanni following his arrest, as well as evidentiary items taken from the apartment of Sonia Karakitis, the appellant's girl friend. Appellant's counsel had been advised prior to trial of the Government's intention to introduce this evidence and had made no motion to suppress. A motion was made at this point and the judge, after a suppression hearing, denied the motion. At the hearing, an FBI agent testified as to the voluntariness of Sonia Karakitis' consent, given both orally and in writing, to search her apartment. Di Giovanni's counsel declined the Government's offer to make Karakitis available as a defense witness on the consent issue.

### The Second Trial

At the second trial, Di Giovanni, Sadowski and Patrick Dougherty were tried for the robbery of a National Bank of North America branch on July 2, 1975. Di Giovanni and Sadowski were convicted; Dougherty was acquitted.

Prior to jury selection, the Government showed all its anticipated exhibits to defense counsel. Although no objection was made to any particular exhibit, Di Giovanni's counsel moved to suppress all material obtained in the search of the Karakitis apartment. Judge Costantino ruled that under Fed.R.Crim.P 12(f) any suppression hearing must be conducted before the impaneling of the jury. Following this ruling, none of the defendants requested a suppression hearing as to the consent search.

At the second trial, Grafman and Markson again appeared as witnesses for the Government. Grafman was subjected to extensive cross-examination. Sadowski's attorney elicited from Grafman that, while he and Di Giovanni had participated in four robberies, Sadowski was only involved in one of these, North American. Di Giovanni's attorney made no objection to this testimony until the second day of cross-examination. Judge Costantino stated that he had been waiting for an objection to that line of questioning and later expressed surprise at the lack of objections on behalf of appellant Di Giovanni. Although counsel for Di Giovanni asserts that a standing objection had been made, there is no evidence of one in the record.

Grafman also testified to a telephone conversation with Sadowski after the North American robbery concerning the future commission of a bank robbery. Di Giovanni's and Sadowski's counsel made a standing objection to this testimony.

The Government also called Sonia Karakitis as a witness. On cross-examination she

testified that she had signed a consent form and had given oral permission to the FBI to search her apartment following Di Giovanni's arrest. She also admitted to absconding with a rented car under a false name and to casing a bank with Di Giovanni after July 2, 1975. In each case further exploration of these self-incriminating admissions was foreclosed when the witness invoked the Fifth Amendment following a warning by the court of her privilege against self-incrimination. Motions by all defendants to strike Karakitis' testimony because of her invocation of the Fifth Amendment were denied.

■ The judgments of conviction against both appellants are hereby affirmed in all respects. Di Giovanni argues that the joinder in the first trial of the two bank robberies (July 18th and July 24th, 1975) was reversible error but he has failed to show substantial prejudice. *United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). The bank robberies were committed within six days of each other and the modus operandi used in each was the same. Joinder of both robberies in one trial was fully authorized by Fed.R. Crim.P. 8(a).[1] We find no abuse of discretion in the denial of the motion to sever.

■ We find equally unpersuasive the appellants' contention that separate trials of the participants in the National Bank of North America robbery should have been granted. Again the burden of showing prejudice is upon the appellants. *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir. 1970), cert. denied, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). Sadowski's claim that his cross-examination of Government witness Grafman was improperly curtailed because of possible prejudice to Di Giovanni, his co-defendant, is not supported by the record. Sadowski's cross-examination was thorough and the issue of Grafman's credibility was squarely brought to the attention of the jury. Grafman's implication in other robberies was fully exploited by Sadowski. While this testimony did implicate Di Giovanni, whose claim of prejudice has more substance, his counsel objected to it only once and then after prodding by the trial judge. Rather, in fact, he rejected the suggestions of the Government that the witness could be instructed to avoid mentioning Di Giovanni's name with respect to other bank robbery incidents and did not accept the court's offer that he prepare a cautionary instruction in an effort to protect his client. The appellants' defenses here were not in fact as antagonistic as those encountered in such cases as *DeLuna v. United States,* 308 F.2d 140 (5th Cir. 1962), and *United States v. Johnson,* 478 F.2d 1129 (5th Cir. 1973), which presented a sharp conflict between defendants.[2] We conclude that the appellants have not

---

1. *"Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting part of a common scheme or plan." Fed.R.Crim.P. 8(a).

2. In *United States v. Johnson,* 478 F.2d 1129 (5th Cir. 1973), Johnson's co-defendant directly incriminated the appellant. The co-defendant in *DeLuna v. United States,* 308 F.2d 140 (5th Cir. 1962), based part of his case on appellant DeLuna's failure to testify. Neither of these extreme situations was present in the trial below. It was the Government's contention that three men entered the bank: one, whom it stated was Sadowski, guarded the door and two, allegedly Grafman and Di Giovanni, who vaulted the counter. Sadowski's theory was that Grafman and Di Giovanni masterminded the four robberies, choosing different accomplices for each one and that Sadowski, who was innocent, was being proffered as a sacrificial lamb to protect the unknown guilty accomplice in the first robbery. Although this clearly conflicts with Di Giovanni's position of innocence, it does not reach the extremes of *Johnson,* where one defendant testified that the other had committed the crime charged, admitted his own participation in that event but based his innocence on a lack of mens rea. Here the Government, and the co-defendant, made the case against Di Giovanni. Sadowski could never testify that he saw his co-defendant commit the crime without shattering his theory that he was the victim of a scheme of Grafman to protect the true accomplice.

"overcome the difficult burden of demonstrating sufficient prejudice to have warranted severance." *United States v. Finkelstein,* 526 F.2d 517, 525 (2d Cir. 1975), cert. denied, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

 Di Giovanni's argument that the Government somehow failed to comply with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding evidence as to the voluntariness of the consent given by Sonia Karakitis to search her apartment, is without merit. In the first trial Karakitis was made available by the Government but Di Giovanni did not take advantage of the offer even though he was present at the search and witnessed the events claimed to constitute consent on her part. "The government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony he might furnish." *United States v. Stewart,* 513 F.2d 957, 960 (2d Cir. 1975).

 Appellants' arguments with respect to the admission of testimony are not well founded. The testimony of Markson, a cellmate of Di Giovanni and Grafman, relating a three-way conversation in which the latter two described their roles in a bank robbery consisted of direct admissions or adoptions and was admissible under Rule 801(d)(2)(A) and (B), Federal Rules of Evidence. Sadowski's telephone conversations after the robbery of the National Bank of North America in which he described a proposed bank robbery were clearly admissible to establish criminal intent and motive. *United States v. Miranda,* 526 F.2d 1319 (2d Cir. 1975), cert. denied, —— U.S. ——, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); Fed.R.Evid. 404(b). The court gave the appropriate limiting instruction to the jury. We further find no error in the trial court's permitting Karakitis to assert her Fifth Amendment rights against incrimination when collateral matters were inquired into by Sadowski's counsel on cross-examination. *United States v. Cardillo,* 316 F.2d 606 (2d Cir.), cert. denied, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963).

We have reviewed the record and the evidence of guilt adduced by the Government is overwhelming. We have considered all of the arguments made by appellants and affirm the judgments of conviction.