STATE of Iowa, Appellee,

v.

Mark R. SAULS, Appellant.

No. 83–704.

Supreme Court of Iowa.

Oct. 17, 1984.

Mark J. Smith of Wills, McNally & Bowman, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and William E. Davis, County Atty., for appellee.

UHLENHOPP, Justice.

This appeal involves legal questions which arose in a prosecution for murder

and theft. *See also State v. Marit,* — N.W.2d — (Iowa 1984).

Defendant Mark R. Sauls presents three issues: whether the trial court abused its discretion by failing to grant his motion for severance of the trials of Sauls and his codefendant, Michael L. Marit; whether Sauls was afforded effective assistance of counsel; and whether jury instructions 13 and 24 deprived Sauls of due process of law.

The jury could find the facts as follows. Sauls and Marit were headed for Davenport, Iowa, from Litchfield, Illinois. Marit was seeking to collect a debt from Steven Wayne Estabrook for previously finding stolen drugs which were taken from Estabrook's car by an acquaintance of Marit. Sauls had met Marit while they were incarcerated in jail in Hillsboro, Illinois. Marit did not have a driver's license and asked Sauls to accompany him on the trip.

The pair had car trouble on the trip which caused them to stop on Interstate Highway 80 near the interchange with Interstate 280. The two men walked to a nearby service station, where Marit called Estabrook. In a short time Estabrook arrived. Marit, by his own testimony, intended to "rough up" Estabrook because of Estabrook's refusal to send him the money so that he could bond out of the Hillsboro jail. After Estabrook met the two men at the service station, Sauls sat in the back seat of the car and the three headed toward the disabled vehicle.

The testimony at this point is conflicting. Sauls testified Marit grabbed Estabrook and stabbed him in the left arm, then Estabrook took off across the interstate, and Marit followed Estabrook and later returned without him. Marit testified, however, that Sauls stabbed Estabrook, then Estabrook took off across the interstate, and Marit pursued him to try to aid him.

Sauls next testified that he and Marit removed the battery from Estabrook's car in an attempt to start their own disabled vehicle. Marit testified that Sauls actually took the battery.

The Marit car would not start, and a highway patrolman stopped to render aid. Sensing that something was amiss, the patrolman called for assistance. He soon discovered that Marit was wanted on several outstanding warrants in the Davenport area and arrested him. The patrolman further discovered that the battery had been removed from the other car, and he thereupon arrested Sauls also. Subsequently, officers found Estabrook's dead body in a nearby plowed field.

While in custody, each defendant gave several statements to the police which were contradictory in nature. Each defendant's statements were used to impeach him on later cross-examination. Both defendants' statements consistently implicated the other defendant as the perpetrator of the homicide.

Sauls and Marit were charged with first-degree murder and with theft of the battery. They sought unsuccessfully to have separate trials, and were tried together. At trial each defendant testified that without his prior knowledge the other defendant perpetrated the acts which resulted in Estabrook's death. After the State rested, the trial court again denied defendants' motions to sever the trials.

The jury found both defendants guilty of first-degree murder and fifth-degree theft. Following imposition of sentence, both defendants appealed. The present appeal involves Sauls.

■ I. Sauls' first assignment of error is the trial court's refusal to grant a severance of the trials. The general rule is that defendants who are indicted together are tried together. Iowa R.Crim.P. 6(1), 10(2)(e); *State v. Belieu,* 288 N.W.2d 895, 897 (Iowa 1980). Rule 6(4)(b), however, states in pertinent part: "When an indictment or information jointly charges two or more defendants, those defendants may be tried jointly if in the discretion of the court a joint trial will not result in prejudice to one or more of the parties. Otherwise, defendants shall be tried separately." The question now before us is whether defendant Sauls was prejudiced by a joint trial

with Marit, and whether the trial court abused its discretion in failing to grant him a severance.

We have said that Iowa Rule of Criminal Procedure 6(4)(b) is similar to the Federal Rule of Criminal Procedure 14. *State v. Belieu*, 288 N.W.2d 895 (Iowa 1980). As a result, we have held that federal cases, while not binding on this court, constitute persuasive authority. *Id.*

We note, however, that the two rules are not precisely the same in their operative parts. Our rule states that "defendants may be tried jointly if in the discretion of the court a joint trial will *not* result in prejudice to one or more of the parties." It then states, "Otherwise, defendants *shall* be tried separately." Federal rule 14 states that if "it appears a defendant or the government *is* prejudiced by . . . joinder for trial together, the court *may* . . . grant a severance. . . ." (Emphasis added.)

We find that a federal appeals court considered a very similar problem in *United States v. Crawford*, 581 F.2d 489 (5th Cir. 1978). The two defendants in that case were picked up by police after the police noticed that Blanks, a party they knew to be without a driver's license, was driving. While the police were impounding the vehicle, they noticed a partially concealed sawed-off shotgun under the dashboard. Blanks claimed the gun belonged to Crawford, but Crawford contended it belonged to Blanks. *Id.* at 490. Charged jointly, the two defendants unsuccessfully sought separate trials. On Crawford's appeal the court stated that in determining whether a trial court should grant separate trials, it should "balance the possible prejudice to the defendants against the government's interest in judicial economy and must consider the ways in which it can lessen the prejudice by other means." *Id.* at 491 (citations omitted). The court also stated that the "defenses asserted by Blanks and Crawford were irreconcilable as well as mutually exclusive. The sole defense of each was the guilt of the other. . . . Each defendant had to confront not only hostile witnesses presented by the government,

but also hostile witnesses presented by his co-defendant. . . . A fair trial was impossible under these inherently prejudicial conditions." *Id.* at 492. *See also United States v. Johnson*, 478 F.2d 1129 (5th Cir.1973).

The case at bar is as extreme an example for severance as could be conceived. The sole contention of each defendant at trial which could be called a defense was that the other defendant committed the homicide. Does that circumstance constitute "prejudice" which dictates that defendants "shall" be tried separately?

Evidence is not prejudicial merely because it is potent and damning. Both parties naturally seek and introduce the most powerful evidence they can find. Thus Sauls cannot complain solely because Marit's testimony strongly indicated Sauls' guilt. Rather, "prejudice" arises from unfairness, for example, impeachment by proof of an offense of long ago by the defendant. *See* Iowa R.Ev. 609(*b*).

We think unfairness exists when the core of the defense of two defendants is that the other defendant committed the crime, and the State forces the defendants to stand trial together and convict each other. The State can absolutely force each defendant to stand trial alone and, with modern joinder, it can generally force them to stand trial together. But we do not think it should be able to force them to convict each other where their defenses are diametrically opposed. The *State* should convict the defendants; it should not be given the absolute power to force the *defendants* to do so. That smacks of unfairness.

If prejudice does not exist in the present case, in what kind of case would it exist? None has been suggested. Compelling joint trial in the present case would give trial judges absolute power to deny severance. In effect, it would repeal rule 6(4)(b). If the right to compel joint trial is to be made absolute, the proper way is to submit a repealer of the rule to the General Assembly. Rule 6(4)(b) was originally adopted by the Assembly, and the Assem-

bly should be given the opportunity to pass on a repeal. Iowa Code § 813.4 (1983).

The State may suggest that severance should be limited to situations such as *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There the confession of one defendant implicated the second defendant, but the first defendant did not take the stand and could not be cross-examined. The United States Supreme Court held that the second defendant was deprived of his constitutional right to cross-examine when he was forced to stand trial jointly and the confession was introduced. Our rule 6(4)(b), however, is not limited to cases in which a defendant has a constitutional right to severance; the language of the rule is prejudice, not deprivation of a constitutional right. A defendant does not need rule 6(4)(b) to obtain a separate trial when he has a constitutional right to one.

The State may contend that a defendant does not actually sustain prejudice by joint trial because his codefendant might accept a plea bargain to extricate himself from the joint trial and testify against the first defendant anyway. But this would not mean prejudice did not exist. On the contrary, authority to compel joint trial of defendants with antagonistic defenses would give the prosecutor power to exert additional pressure on them by threatening to make them stand trial together and convict each other. Of course, if we knew in advance that both defendants are guilty perhaps an argument would be made that no harm is done by such a course of action. The problem is that one defendant—or even both defendants—may not in fact be guilty. We do not start with a presumption of guilt.

This case is distinguishable from *State v. Snodgrass*, 346 N.W.2d 472 (Iowa 1984), and its companion case, *State v. Hood*, 346 N.W.2d 481 (Iowa 1984). We held in *Snodgrass* that the defendant is not entitled to a severance where a "common core" of defense exists, *Id.* at 477, and that since both defendants alleged the shooting and stabbing were justified, but under differing factual accounts, the denial of separate trials

did not constitute an abuse of discretion. *Id.* at 476. In this case, however, we do not have a common core defense. Each party lays the crime at the feet of the other. The defenses are not in common; they are irreconcilable. In *Snodgrass* we stated the test for determining irreconcilability thus:

> [T]he defense of a defendant reaches a level of antagonism (with respect to the defense of a codefendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.... Where two defendants present defenses that are antagonistic at their core, a substantial possibility exists " 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " If the essence of one defendant's defense is contradicted by a co-defendant's defense, then the latter defense can be said to "preempt" the former. This sort of conflict between defendants creates the impelling prejudice that mandates severance. *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981).

*Id.* at 475.

■ Under this record, where the sole contention of each defendant which could be claimed to be a defense was that he was innocent and the other defendant was culpable and each defendant so testified at trial, we hold that the trial court abused its discretion in refusing to grant a severance.

■ II. Sauls' second proposition is that he did not have effective representation by trial counsel. The record before us is not sufficient to permit us to decide this question and, in any event, trial counsel's conduct of which Sauls complains may not recur on retrial.

III. Finally, Sauls asserts that the trial court's jury instructions 13 and 24 deprived him of due process of law. As this question will likely arise on retrial we direct our attention to it.

Under the State's trial information and the evidence presented, the jury could find that Sauls personally murdered Estabrook or Sauls and Marit together murdered him, and that Sauls did so (a) with premeditation or (b) while Sauls was personally robbing Estabrook or while Sauls and Marit together were robbing Estabrook. Alternatively, the jury could find that (a) Marit murdered Estabrook with premeditation and Sauls knowingly participated in that crime or (b) Marit murdered Estabrook while he was robbing Estabrook and Sauls knowingly participated in the robbery. Under any of these scenarios the jury could find Sauls guilty of first-degree murder, either as the murderer or as an accomplice. *State v. Cuevas*, 281 N.W.2d 627 (Iowa 1979).

Saul's present objection relates specifically to the instructions on the particular scenario of Sauls as an accomplice to a robbery by Marit, with a subsequent murder by Marit resulting in felony-murder under section 707.2(2) of the Iowa Code (1981).

Section 703.2 of the Code provides:

When two or more persons, acting in concert, knowingly participate in a *public offense*, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and his or her guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

(Emphasis added.) In one of its instructions, the trial court quoted this section verbatim including the words "public offense". Sauls first argues that those words permitted the jury to find him guilty of first-degree felony murder if the jury found him guilty of participating in any public offense—and the evidence shows that on the occasion in question Sauls and Marit committed two non-violent offenses: smoking marijuana and stealing Estabrook's car battery.

 The trial court's instructions, however, must all be read together. *Robe-*

*son v. Dilts*, 170 N.W.2d 408 (Iowa 1969). In its marshalling instruction and in its instructions on robbery, the trial court made clear that the underlying offense as to felony-murder was robbery. We do not think the jury was misled. The crime of robbery is a forcible felony which qualifies a homicide for first-degree murder under the felony-murder section. Iowa Code § 702.11. On retrial, however, the district court would be well advised to substitute the words "forcible felony" in the instruction.

Sauls also argues that homicide must be foreseeable from the standpoint of the underlying offense. *See State v. Kneedy*, 232 Iowa 21, 3 N.W.2d 611 (1942); *State v. Lucas*, 55 Iowa 321, 7 N.W. 583 (1880). *See also* Iowa Code § 703.2 ("unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense"). In the present case this factor is met by section 707.2(2), making first-degree murder of a homicide committed while participating in a forcible felony, and section 702.11, making robbery a forcible felony. If the State established that Marit murdered Estabrook in the course of robbing him and that Sauls participated in the robbery of Estabrook, the foreseeability requirement of section 703.2 would be satisfied.

Section 703.2 on guilt of one crime through participation in another crime is said to expand criminal liability beyond section 703.1 on aiding and abetting. *State v. Irvin*, 334 N.W.2d 312 (Iowa App. 1983); Yeager and Carlson, *Criminal Law and Procedure* § 63 (1979). Commentators contend, however, that such provisions as section 703.2 are not without outer limits. LaFave and Scott, *Criminal Law* 516–17 (1972); Dunahoo, *Iowa Criminal Code*, 29 Drake L.Rev. 237, 287–88 (1979). The present case clearly comes within those limits, however, as complicity in murder on the basis of participation in an underlying forcible felony is firmly rooted in the law. LaFave and Scott, § 65, at 517, § 71, at 553; Dunahoo, 29 Drake L.Rev. at 288.

We find no error in the instructions complained of.

We return the case to district court for a new trial of Sauls separate from Marit's new trial.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who concurs specially, and CARTER, McGIVERIN, and SCHULTZ, JJ., who dissent.

HARRIS, Justice (concurring).

I agree with the majority opinion except for its discussion of our holding in *State v. Snodgrass*, 346 N.W.2d 472 (Iowa 1984). Because I adhere to my dissent in *Snodgrass*, I concur in result.

CARTER, Justice (dissenting).

I dissent.

The opinion of the court in the present case unnecessarily curtails the highly desirable practice of joint criminal trials for defendants who are jointly charged. Only a few months have passed since the propriety of denying severance based upon incompatibility of defenses among defendants jointly charged was approved in *State v. Snodgrass*, 346 N.W.2d 472 (Iowa 1984), which took an ad hoc approach to prejudice in deciding such issues. Today, we take an unwarranted step backward from *Snodgrass* and adopt a rule which will inevitably lead to a widespread practice among our trial judges of granting severance on demand.

The majority opinion suggests that *Snodgrass* approved the following standard which is quoted in *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. 1981):

> If the essence of one defendant's defense is contradicted by a codefendant's defense, then the latter defense can be said to "preempt" the former. This sort of conflict between defendants creates the compelling prejudice that mandates severance.

*Snodgrass* did not approve that approach to prejudice in instances involving antagonistic defenses of parties jointly charged. The *Berkowitz* standard is tantamount to a per se approach for those cases falling within its broad definition of an antagonistic "core" defense. A majority of the federal circuits do not espouse such a rule. The cases on both sides of the issue are set forth in *Snodgrass*. *See also* Annot. 83 A.L.R.3d 245, 260–61 (1978). Cases favoring an ad hoc approach predominate. We opted for an ad hoc approach to the question in *State v. Belieu*, 288 N.W.2d 895, 900 (Iowa 1980), where we stated:

> Mere hostility among codefendants is insufficient to show an abuse of discretion. Nor does an effort of a codefendant to incriminate the defendant, even if successful, by itself demonstrate the requisite prejudice. Prejudice may usually be avoided in such situations by the existence of the right to cross-examine the codefendant and the use of limiting instructions.

(Citations omitted).

The basic premise of such cases as *Berkowitz* is false. That premise is that where two defendants present defenses which are antagonistic at their core, the jury will unjustifiably infer that both are guilty. Noticeably, the proponents of this theory advance no empirical data in its support. Even if such unwarranted conclusions by a jury might result in some cases, the likelihood of such an occurrence is not so firmly rooted in common experience as to suggest that the potential for an unfair trial outweighs the clearly demonstrable advantages to society which flows from joint criminal trials.

Admittedly, separate trials will often provide a better opportunity for acquittal of a particular defendant than will a joint trial. This circumstance does not necessarily flow from any basic unfairness in joint trials but rather from the fact that a greater range of evidence is normally made available in a joint trial some of which may tend to show a particular defendant's guilt. This circumstance is due to the fact that in

joint trials it is within the power of more persons to present evidence.

Often evidence which is solely within the possession of one defendant would be unavailable to the State for use at a separate trial of another defendant who has been jointly charged. If such evidence does come in as a result of a joint trial and suggests the guilt of the other defendant, this does not create a fundamental unfairness in the procedure. Our system of justice operates on the theory that, absent some established exclusionary rule, all relevant and material evidence is ordinarily admissible and should be heard by the jury. Its credibility and weight is peculiarly for the jury to decide. Any credible evidence which tends to show that a defendant is guilty is prejudicial but does not produce an unfair trial.

Courts which have carefully considered the issue of incompatible defenses have concluded that, in order to justify granting a motion for severance, more must be shown than the likelihood that a separate trial might offer a better chance of acquittal to the moving party. *United States v. Boyd*, 610 F.2d 521, 525 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); *United States v. Adams*, 581 F.2d 193, 198 (9th Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). *See also Criminal Law in the Ninth Circuit: Recent Developments*, 15 Loy.L.A.L.Rev. 597, 599–605 (1982). In describing the nature of the prejudice required to justify severance, the Eighth Circuit has stated:

> Severance becomes necessary [only] where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants.

*United States v. Jackson*, 549 F.2d 517, 525 (8th Cir.1977).

In a simple factual situation such as that presented in the present homicide case, the fact that each of the defendants seek to exculpate himself by implicating the other does not frustrate the jury's ability to compartmentalize the evidence as it relates to separate defendants. Rather, such sharp conflict in the testimony by its very nature enhances the jury's opportunity to focus its attention on the relationship of the evidence to each defendant. In regard to the jury's ability to discern the truth, such an atmosphere is ideal and preferable to that which would ordinarily result from separate trials.

Given the role of the jury in our system of justice, we must accept the ability of that institution to resolve the difficult issues of credibility which are presented. There is no reason to believe it is any more difficult for the jury to fairly do this when the conflicting evidence involves the testimony of two defendants jointly tried than when the conflict is between the testimony of a defendant and that of an admitted accomplice who is not being tried as a result of an agreement with the prosecutor. The latter situation is common place, yet no suggestion is found in the cases or literature that it denies a fair trial. The confidence which we place upon the jury to resolve that situation should carry over into situations involving joint trials of defendants with similarly incompatible stories. We expressed such confidence in the jury in *Belieu*, 288 N.W.2d at 900–01 and should not retract it now.

It takes little imagination to predict that the result of today's opinion will be that trial judges will grant severance on demand of a jointly tried defendant. They will not wish to risk going through a trial and then losing the benefit with respect to both defendants by a decision on appeal mandating two new trials. The situation is aggravated by the fact that it will be solely within the power of the defendant to present evidence as to his theory of defense in advance of trial. Such evidence will not bind that party at a later stage of the proceedings and will predictably be shaped to produce the result sought to be achieved—a separate trial. It will be next to impossible for the State to combat such tactics.

The legislature in the revised criminal code wisely left to this court the role of

establishing the standard of prejudice required to mandate separate trials. We adopted a wise and workable standard in *Belieu* and *Snodgrass* under which the joint trial in the present case can easily be upheld. I would retain that standard and affirm defendant's conviction in the present case.

McGIVERIN and SCHULTZ, JJ., join this dissent.