STATE of Iowa, Appellee,

v.

Franklin R. BELIEU, Appellant.

No. 63369.

Supreme Court of Iowa.

Feb. 20, 1980.

Thomas R. Isaac of Slack & Isaac, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Jeanine Freeman, Asst. Atty. Gen., Dan Johnston, Polk County Atty., and Robert Blink, Asst. Polk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE, and McGIVERIN, JJ.

McCORMICK, Justice.

In this case of first impression involving Iowa R.Crim.P. 6(4), the determinative question is whether the trial court abused its discretion in overruling defendant Franklin R. Belieu's motions to sever his trial from that of two codefendants. We find an abuse of discretion and therefore reverse.

Iowa R.Crim.P. 6(4) provides in relevant part:

a. *Multiple defendants.* Two or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or the same transaction or occurrence out of which the offense or offenses arose. Such defendants may be charged in one or more counts together or separately, and all the defendants need not be charged in each count.

b. *Prosecution and judgment.* When an indictment charges a defendant with a felony, and the same indictment charges two or more defendants, those defendants jointly charged may be tried jointly, if in the discretion of the court a joint trial will not result in prejudice to one or more of the parties; otherwise the defendants shall be tried separately. Where jointly tried, each defendant shall be judged separately on each count.

■ Before adoption of the present criminal code, effective January 1, 1978, a defendant had an absolute right to a separate trial on most felony charges, including robbery. § 780.1, The Code 1977; *State v. Berry*, 247 N.W.2d 263, 264–65 (Iowa 1976). Since the adoption of rule 6(4) as part of the code revision, an accused is entitled to a separate trial as a matter of right when the court finds a joint trial would result in prejudice.

■ Rule 6(4)(a) is identical to Fed.R. Crim.P. 8(b). Rule 6(4)(b) is similar to Fed. R.Crim.P. 14, which provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or· by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

Because of the similarities between the rules, federal court decisions which construe and apply the federal rule are persuasive although not conclusive authority for similar construction and application of the Iowa rule. *See Hubbard v. State*, 163 N.W.2d 904, 909 (Iowa 1969).

The question in the present case is whether the trial court correctly construed and applied rule 6(4) in overruling defendant's motions to sever his trial from that of codefendants. The record shows he made his initial motion before the trial started and renewed it several times thereafter.

Defendant and three other persons were charged with two counts of robbery in the first degree in violation of §§ 711.1, 711.2, The Code, based on the alleged robbery of the Neal Drugstore in Des Moines on October 26, 1978. Defendant was arraigned on December 4, 1978. A jury was selected to try defendant jointly with codefendants Tracy Philipson and David Randolph on February 16, 1979. Before the jury was sworn, defendant filed his first motion to sever his trial, alleging that his counsel had just learned the prior afternoon that codefendant Philipson would testify about other criminal offenses of defendant in connection with her defense of diminished responsibility. The motion was supported by counsel's affidavit. In its ruling, the trial court said: "I'm going to overrule the motion at this time, with leave to renew it at such time as any such prejudicial information is presented by any witnesses that would deprive Mr. Belieu of a fair trial, and I think the court has a duty to do that."

Defense counsel moved in limine to prohibit Philipson's counsel from referring to prior criminal activity in his opening statement. This motion was also overruled. When counsel for codefendant Randolph mentioned an alleged earlier offense of defendant in his opening statement, defendant's counsel renewed his motion to sever, and it was overruled again.

No question exists of the sufficiency of the State's evidence to convict. It tended to show that Randolph, accompanied by DeWayne DeBrouse, drove defendant and Tra-

cy Philipson to a point near the Neal Drugstore during the morning of October 26, 1978. Defendant and Philipson donned ski masks and entered the drugstore. Each was armed with a pistol. They held store employees at gun point while defendant ordered one employee to fill a plastic bag with drugs and Philipson took money from the cash register. When the pair left the store, they returned to Randolph's car. They had only gotten two blocks away in the car when they were observed and the car was stopped by a police officer responding to the robbery report. Defendant was identified by a store employee at the scene of arrest as one of the robbers, and Philipson fit the description of the other. Defendant admitted his participation in the robbery on three occasions, once at the scene of arrest and twice later at the police station. Philipson also admitted her involvement and implicated defendant. The pistols, ski masks, and plastic bag containing drugs were found in the Randolph automobile.

The State did not offer any evidence of alleged prior criminal activity. That evidence was received during testimony of Randolph and Philipson as part of their defenses.

Randolph's theory of defense was that he took no part in the planning or execution of the robbery. He testified he drove defendant and Philipson to the vicinity of the drugstore as a favor because defendant's car had bad brakes and was nearly out of gas. He said he believed defendant and Philipson were merely going to visit a friend of Philipson's who lived in a house near where he dropped them off. He testified he had loaned defendant the pistols used in the robbery but had done so only to enable defendant and Philipson to protect themselves. Despite defendant's objection and renewed motion to sever, he was permitted to testify defendant and Philipson feared attack by a person from whom defendant had taken a TV set. He said he knew the day before the robbery that they intended to rob the drugstore but thought they had abandoned the plan when they could not rent a car for that purpose. He

asserted he did not know otherwise until they returned to his car after the robbery. Randolph was permitted to testify, over defendant's objection and renewal of his motion to sever, that a day or two before the robbery defendant said he had once robbed the Ward Drugstore in Des Moines.

Philipson's theory of defense was that she was so dominated by defendant she lacked the capacity to form the necessary specific intent to rob. As part of her effort to demonstrate his dominance, she testified to three alleged prior crimes of defendant. Defense objections and a renewed motion to sever were overruled. One offense was the robbery of the Ward Drugstore, about which Philipson claimed defendant told her but in which she did not participate. The second was the theft of some jewelry from a truck stop approximately two and one-half weeks before the Neal robbery. She said she ate with defendant in the truck stop before the theft but waited in the car for him while he stole the jewelry. The third offense was a break-in of an apartment in which she accompanied defendant. It occurred a few days before the Neal robbery. She said defendant took a television set which he had sold to the occupant of the apartment, who had failed to pay the balance owed.

Both Randolph and Philipson testified without objection to constant and extensive drug usage by defendant and those around him. They portrayed a complex picture of drug purchases and sales, involving cash and barter transactions. From the afternoon of the prior day until the time of the Neal Drugstore robbery, the group smoked marijuana, injected themselves with amphetamines, and did not sleep.

Defendant's theory of defense was that he was under the influence of drugs during this entire time, was thus incapable of forming the specific intent necessary for robbery, and could remember nothing from the time he started taking drugs to celebrate his birthday four days earlier until the day after the robbery. He testified to that effect. He was nevertheless convicted, and this appeal followed.

No dispute exists that defendant preserved error on his contention the trial court erred in overruling his motions to sever. The disputed issues are, first, whether the motions to sever were timely, and, second, whether the trial court abused its discretion in overruling either the initial motion or the renewed motions.

*I. The timeliness of the motions.* Under Iowa R.Crim.P. rule 10(2)–(4) a request for severance is deemed waived unless filed before the earlier of thirty days after arraignment or prior to the impaneling of the trial jury, unless the court grants relief for good cause. When relief is not granted, noncompliance with the rule constitutes waiver of the motion. Rule 10(3); *State v. Hobson*, 284 N.W.2d 239, 241 (Iowa 1979). This rule is modeled on Fed.R. Crim.P. 12, with certain additions. *See* J. Yaeger & R. Carlson, 4 Iowa Practice: Criminal Law and Procedure § 1051, at 236 (1979).

Defendant sought to establish good cause through an affidavit in which his lawyer stated he learned only the day before trial that Philipson was going to attempt to buttress her diminished responsibility defense by testifying about prior criminal activity of defendant. Philipson did not give notice of her intention to urge the diminished responsibility defense until the thirtieth day after defendant's arraignment. She gave no notice the evidence of other crimes was going to be offered to support it. Use of such evidence to support the defense is sufficiently unusual, if not unprecedented, that we do not believe defendant could be charged with earlier notice the evidence was going to be so used.

However, it is not necessary for us to determine whether the trial court would have erred if defendant's initial motion to sever were overruled on the ground of waiver. This is because a finding of good cause for the late filing of that motion is implicit in the order overruling the motion but giving defendant "leave to renew it at such time as any prejudicial information is presented by any witness that would deprive Mr. Belieu of a fair trial." If the court believed the motion was untimely, it would have had no reason to keep the severance issue alive by inviting the defendant to make even later motions.

The real question is whether the court erred in overruling the renewed motions. The only time the court mentioned the timeliness of one of those motions was in overruling the one which was made shortly after Philipson started to testify. The court said: "You didn't make a motion for severance before trial started; you could have, and I think we are in a position now where the pattern has been laid for admission of this evidence, and I hope to cure any prejudicial effect by some instruction to the jury at the time they retire to deliberate."

To the extent this ruling holds that the renewed motion was untimely, it is untenable. Defendant's first motion to sever was in fact made before trial because it was made before the jury was sworn; the motion was tenaciously and persistently renewed from the time of opening statements onward; the court had every opportunity to take appropriate steps to guard against the development of any "pattern" for the admission of the other crimes evidence.

In similar circumstances, under analogous provisions of Fed.R.Crim.P. 12 and 14, federal courts have charged trial courts with a continuing duty to grant severance upon a renewed motion and showing that the defendant's right to fair trial is threatened. *See Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921, 925 (1960); *United States v. Walton*, 552 F.2d 1354, 1362 (9th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). We believe these holdings are apposite in the present case. We hold that, at least when a defendant makes a pretrial motion to sever which is overruled with leave to renew it when prejudice threatens, the trial court has a continuing duty under rule 6(4)(b) to grant severance if prejudice does appear, provided only that defendant informs or alerts the court in sufficient time to permit consideration of steps to avoid prejudice.

Therefore, whether or not defendant established good cause for late filing of his initial motion, he did not waive his right to renew the motion to alert the trial court to his claim the proffered evidence would deny him a fair trial. The renewed motions were timely for that purpose.

*II. The exercise of discretion.* Rule 6(4)(b) vests the decision of a motion to sever in the discretion of the trial court. A joint trial is permissible "if in the discretion of the court a joint trial will not result in prejudice to one or more of the parties; otherwise the defendants shall be tried separately."

 When a trial court denies severance in the exercise of its discretion, the ruling will be reversed on appeal only if the defendant demonstrates an abuse of discretion. *See United States v. DiGiovanni,* 544 F.2d 642, 644 (2d Cir. 1976); *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir. 1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). To establish an abuse of discretion, the defendant must show sufficient prejudice to constitute denial of a fair trial. *See, United States v. Knife,* 592 F.2d 472, 480 (8th Cir. 1979); *United States v. Rucker,* 586 F.2d 899, 902 (2d Cir. 1978); *United States v. Crawford,* 581 F.2d 489, 491 (5th Cir. 1978).

 Mere hostility among codefendants is insufficient to show an abuse of discretion. *E. g., United States v. Troutman,* 458 F.2d 217, 221 (10th Cir. 1972); *United States v. Barber,* 442 F.2d 517, 530 (3d Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971); *United States v. Cohen,* 124 F.2d 164, 166 (2d Cir. 1941), *cert. denied,* 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942). Nor does an effort of a codefendant to incriminate the defendant, even if successful, by itself demonstrate the requisite prejudice. *E. g., United States v. Jenkins,* 496 F.2d 57, 68, 71 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975). Prejudice may usually be avoided in such situations by the existence of the right to cross-examine the codefendant and the use of limiting instructions. *E. g., United States v. Walton,* 552 F.2d at 1359–60; *United States v. Gary,* 447 F.2d 907, 909–10 (9th Cir. 1971).

The efficacy of limiting instructions has been upheld in some cases when evidence is admissible against one defendant but not another. *E. g., United States v. Lyles,* 593 F.2d 182, 190 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Knife,* 592 F.2d at 480; *United States v. Rhodes,* 569 F.2d 384, 390 (5th Cir. 1978). Thus, as in *Lyles,* prejudice was held not established when the State introduced other crimes evidence against a codefendant which did not implicate the defendant and a limiting instruction was given. A more serious situation is presented when the other crimes evidence is not clearly unrelated to the defendant. Still, limiting instructions may be sufficient to preclude prejudicial "spill-over" effect against the defendant, depending on the circumstances. *See, e. g., United States v. Rosenwasser,* 550 F.2d 806, 808–09 (2d Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977).

 Prejudice can also be avoided if the other crimes evidence would have been admissible in the State's case against the defendant. *See United States v. Hajal,* 555 F.2d 558, 566–68 (6th Cir.), *cert. denied,* 434 U.S. 849, 98 S.Ct. 159, 54 L.Ed.2d 117 (1977); *United States v. Gant,* 487 F.2d 30, 33 (10th Cir. 1973), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 293 (1974).

However, the present case presents a different situation. The other crimes evidence was offered to buttress defenses through the use of evidence which would have denied defendant a fair trial if used by the State against him over his objection. The evidence was not merely irrelevant to the State's case against him. It was highly prejudicial.

 The State contends it would have been admissible against him to prove intent under the recognized exception to the bar against proof of other crimes. The problem with this contention is that the alleged prior crimes had no relevancy in proving defendant's intent in the present case. The intent

exception does not apply when intent may be inferred from the nature of the act charged; it applies only when by its nature the act might have been entirely innocent. Under this principle, this court held a defendant's intent to steal soybeans could not be proved by evidence he stole soybeans on other occasions in *State v. Wright*, 191 N.W.2d 638 (Iowa 1971). When the other crime is wholly independent of the offense charged, it does not satisfy the requirement of relevancy. *State v. Cuevas*, 282 N.W.2d 74, 80 (Iowa 1979); *State v. Zuch*, 267 N.W.2d 52, 55 (Iowa 1978).

The rule excluding evidence of other crimes of a defendant is based on the fundamental principle that "[a] defendant must be convicted only if it is proved he committed the offense charged and not because he is a bad man." *State v. Wright*, 203 N.W.2d 247, 250 (Iowa 1972). One crime cannot be proved by proof of another. *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). Unless evidence of other crimes has probative value under a recognized exception, a trial court has no discretion to admit it. In the present case the evidence tended only to establish defendant's bad character and propensity to crime. No foundation existed for admitting the other crimes evidence against him under any recognized exception. Therefore it would have been prejudicial error for the court to admit the evidence against him. *See State v. Oppedal*, 232 N.W.2d 517 (Iowa 1975).

The crucial issue is whether the prejudicial impact of this evidence was avoided by the court's cautionary instructions. During Randolph's testimony, the court admonished the jury that the evidence was received only in relation to his defense and not as proof of defendant's guilt. The same admonition was included regarding Philipson's use of the evidence in one of the court's instructions upon submission of the case.

We have recognized the sufficiency of cautionary instructions in most situations. They are deemed insufficient only in extreme cases. *See State v. Bolds*, 244 Iowa 278, 282, 55 N.W.2d 534, 535–36 (1952). A similar issue was involved in *Bruton v.*

*United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The *Bruton* Court observed that one purpose of Fed.R.Crim.P. 14 is to provide a procedure for severance in situations where limiting instructions would not erase prejudice in a joint trial. The Court said: "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485. The Court held limiting instructions were not an adequate substitute for the accused's right of confrontation when faced with a codefendant's confession implicating the accused.

We believe the present case presents an analogous problem. No way existed at trial for defendant to protect himself against the prejudicial impact of the evidence of his prior criminal activity. The possible prejudice was great; it is the kind which the severance rule is designed to avoid. *See United States v. Reed*, 376 F.2d 226, 228 (7th Cir. 1967). We do not believe this is the kind of prejudice which can be erased by a limiting instruction. It did not involve a brief, inadvertent reference to prior criminal activity, promptly stricken from the record as in *State v. Cage*, 218 N.W.2d 582 (Iowa 1974). Instead, it involved numerous references to other alleged crimes which remained part of the record because of purported relevancy to the codefendants' defenses. The evidence was so pervasive and central to the defenses that its prejudicial effect against this defendant could not reasonably be cured by a limiting instruction. *See State v. Ware*, 205 N.W.2d 700, 704 (Iowa 1973). As with the codefendant's confession in *Bruton*, no way existed for defendant to combat the evidence without compounding the prejudice.

Nor was the prejudicial effect mitigated by the strength of the State's evidence against defendant. Assuming the evidence was overwhelming in other respects, it was not so strong on the issue of specific intent that his defense was not entitled to jury

consideration free from the spill-over effect of the other crimes evidence. The injury to his rights sufficiently appears. *See State v. Trudo*, 253 N.W.2d 101, 107 (Iowa), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977).

 Without deciding whether the trial court abused its discretion in overruling defendant's initial motion to sever, we hold that the court did so in overruling the motion when it was renewed during the testimony of Randolph and Philipson. Considerations of judicial economy must give way when they have the effect of denying an accused a fair trial. We hold that defendant established a right to be tried separately.

REVERSED AND REMANDED.