# IN THE COURT OF APPEALS OF IOWA

No. 20-0077
Filed August 18, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**NATHAN LEE BROCKS,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Kevin McKeever, Judge.

Defendant appeals his convictions for first-degree burglary, third-degree kidnapping, domestic abuse assault causing bodily injury, and obstruction of emergency communications. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Nathan Brocks appeals his convictions for first-degree burglary, third-degree kidnapping, domestic abuse assault causing bodily injury, and obstruction of emergency communications. We conclude the district court did not abuse its discretion in denying Brocks's motions for mistrial. We conclude the court did not abuse its discretion in ruling a defense witness's proposed testimony that the victim used methamphetamine in the past was not relevant nor admissible for impeachment purposes. Furthermore, Brocks's claims of ineffective assistance of counsel cannot be raised in this direct appeal. We affirm his convictions.

**I.      Background Facts & Proceedings**

A reasonable jury could have found the following facts from evidence presented at trial. Brocks and T.B. were married and had two children. There was a history of domestic violence in their relationship. T.B. testified that in August 2015, Brocks pushed her while she was holding their daughter. The daughter received a scrape on her forehead, and T.B. had a bump on her head. In January 2016, Brocks got into an argument with T.B. He broke her phone and hit her across the face. In May 2016, T.B. asked Brocks to move out. As a result of the request, Brocks grabbed T.B. and slammed her down on the kitchen floor, then covered her mouth so she could not scream for help.

In January 2019, Brocks and T.B. were separated and T.B. lived in an apartment with the children. On January 3, Brocks called T.B. and threatened to assault her. T.B. obtained a no-contact order due to such threat. She also obtained a can of mace. T.B. came home at about 6:00 a.m. on January 6 after spending the night with some friends. She opened her car door, and Brocks was

"standing right there." Brocks stated, "Bitch, get the fuck out of the car." When T.B. refused, Brocks reached into the car and began punching T.B. in the face. Although T.B. managed to close the car door, Brocks jumped into the back seat and continued to strike her.

Brocks then dragged T.B. out of the car by her hair. She fell on the ground, and Brocks kicked her in the face multiple times. Brocks then brought T.B. into her apartment. The apartment was in disarray, with drawers dumped out and clothes strewn about the apartment. All of the pictures were ripped off the wall except the photos of the parties' daughter. The sliding glass door to the apartment had been broken, and the television stand had been overturned. Brocks dragged T.B. across the broken glass and yanked her over the television stand. T.B. fell onto her couch. She tried to get up more than once, but Brocks pushed her back down and continued to hit her. T.B. asked to leave and get medical assistance, but Brocks refused. When T.B. attempted to call 911, Brocks took her phone.

After about two hours of the ongoing assault, Brocks took T.B.'s phone into the bathroom. T.B. rolled off the couch and crawled into the kitchen, where she was able to retrieve the can of mace. T.B. managed to get out of her apartment. However, Brocks charged after her, grabbed her hair, and slammed T.B. into a hallway wall. T.B., with her eyes closed, sprayed Brocks with the mace. T.B. testified that she unloaded approximately half of the can of mace before Brocks released her and she was able to run out the door of the apartment building and across the street, where she received assistance from two women. One of the women called 911. Officers were able to apprehend Brocks, who had returned to T.B.'s apartment.

T.B. received medical assistance. She was diagnosed with a concussion, a broken nose, and two black eyes. She also had an injury because her tooth went through her lower lip. Brocks was charged with burglary in the first degree, in violation of Iowa Code section 713.3 (2019); kidnapping in the third degree, in violation of section 710.4; domestic abuse assault causing bodily injury, in violation of section 708.2A(4); and obstruction of emergency communications, in violation of section 727.5.[1]

A jury found Brocks guilty of the charges. The district court denied Brocks's motions for judgment of acquittal and for a new trial. Brocks was sentenced to terms of imprisonment not to exceed twenty-five years, fifteen years, fifteen years, and thirty days, respectively. The sentences for third-degree kidnapping and domestic abuse assault causing bodily injury were to be served concurrently but consecutively to the sentence for first-degree burglary. Brocks appeals his convictions.

## II.     Motions for Mistrial

Prior to trial, Brocks filed a motion in limine requesting a ruling that prohibited evidence that he was released from prison on January 3, 2019. The State resisted the motion. The court ruled the evidence was not relevant to the charges against Brocks and was inadmissible.

On direct examination during the jury trial, T.B. was asked about a phone call Brocks made to her on January 3. T.B. testified, "He stated it was him, Nathan, and he said, I'm out and I want to see my kids." Brocks did not object to the

---

[1] Brocks was also charged with tampering with a witness, in violation of section 720.4, but this charge was dismissed.

testimony. At the close of T.B.'s direct testimony, Brocks moved for a mistrial on the ground that T.B.'s statement improperly indicated that Brocks had been in prison.[2] The court found the statement was ambiguous and denied the motion for a mistrial.

On cross-examination, T.B. was asked again about the telephone call on January 3. She stated, "It was actually January—the day he got out, I believe it was the—yeah, I think it was the 3rd." Brocks renewed his motion for a mistrial. The court denied the motion, stating, "But I will say that I am likely to grant the mistrial if we hear any more about anything that is related to that." Brocks declined the court's offer of a curative instruction.

Brocks contends the district court abused its discretion by denying his motions for a mistrial. We review a district court's ruling on a motion for mistrial for an abuse of discretion. *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). We will reverse the court's ruling if it is "clearly untenable or clearly unreasonable." *State v. Goodson*, 958 N.W.2d 791, 798 (Iowa 2021). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Fortune v. State*, 957 N.W.2d 696, 703 (Iowa 2021).

"[T]o show an abuse of discretion by the district court in denying a motion for mistrial, the defendant must show prejudice that prevented the defendant from having a fair trial." *State v. Tewes*, No. 20-0253, 2021 WL 1904693, at *5 (Iowa

---

[2] The oral ruling on the motion in limine prohibited the State from mentioning that Brocks was released from prison on January 4. Brocks's release from prison occurred just days prior to the charges at issue in the instant appeal.

Ct. App. May 12, 2021). It is inappropriate for the State to violate a pretrial order in limine but where the defendant is not prejudiced, the court does not abuse its discretion in denying a motion for mistrial. *Id.* We consider whether the statements relate to the charges at issue and were isolated. *See State v. Haywood*, No. 16-1369, 2017 WL 4570510, at *6 (Iowa Ct. App. Oct. 11, 2017).

The two references in question were ambiguous and were an insignificant piece of T.B.'s testimony. The Iowa Supreme Court has found that mentioning the defendant's "drug charges" does not require a mistrial. *See State v. Lopez-Aguilar*, No. 17-0914, 2018 WL 391672, at *4 (Iowa Ct. App. Aug. 15, 2018) (rejecting a similar claim because "[t]he challenged evidence was insignificant given the length of the trial and scope of the evidence" and "[t]he district court aptly characterized the reference as 'a throw-away line'"). Also, like in *Newell*, jurors were instructed that Brocks was "not on trial" for any other wrongful acts and that they could only be used "for the purpose of establishing motive and/or intent." 710 N.W.2d at 32–33.

The trial court offered to give an additional cautionary or curative instruction—but Brocks did not request one. Even if a witness makes a series of improper references to a defendant's criminal history, that does not require a mistrial unless it becomes "so pervasive . . . that its prejudicial effect . . . could not reasonably be cured by a limiting instruction." *See State v. Plain*, 898 N.W.2d 801, 815 (Iowa 2017) (quoting *State v. Belieu*, 288 N.W.2d 895, 901–02 (Iowa 1980)). Because Brocks had a way to "combat the evidence without compounding the prejudice," it was reasonable not to grant a mistrial. *See id.* (quoting *Belieu*, 288 N.W.2d at 901).

Lastly, the evidence against Brocks was strong—T.B. testified to the hours of abuse she suffered, which were demonstrated in photos and a video admitted into evidence. *See State v. Greene*, 592 N.W.2d 24, 32 (Iowa 1999) (considering strength of evidence in concluding no prejudice warranting a mistrial).

Although T.B. mentioned twice that Brocks "got out" on January 3, she did not specifically state that he got out of prison, which would have violated the pre-trial ruling on Brocks's motion in limine. We agree with the court's conclusion that T.B.'s statements were ambiguous. Furthermore, there were no other references in the record to the matter. Given the strength of the evidence offered by the State, Brocks has not shown he was prejudiced by the court's ruling or was denied a fair trial. *See State v. Huser*, 894 N.W.2d 472, 498 (Iowa 2017) (noting a motion for mistrial should be granted only when a defendant has been prejudiced). We conclude the district court did not abuse its discretion in denying Brocks's motions for mistrial.

### III.    Evidentiary Ruling

On cross-examination of T.B., defense counsel asked if she used methamphetamine. T.B. stated she used "[o]nce in my lifetime, like in that period of time." She stated she had not used methamphetamine recently. Brocks testified he saw T.B. sitting in her car outside the apartment building smoking crystal methamphetamine on January 6. He stated he grabbed the pipe from her and a baggie full of a white substance. Brocks testified T.B. tried to grab the baggie back from him and he grabbed her and "slung her to the side." Brocks stated T.B. was

injured because she hit the side of a dumpster as she fell down. He stated he threw away the drugs.

Brocks wanted to present the testimony of Trevor Clinton. In an offer of proof, Clinton testified that he previously used methamphetamine with T.B. When questioned about January 6, Clinton stated, "Without being exact, I would like to say I'd used prior to that and after." Brocks argued that Clinton's testimony was relevant to substantiate his testimony about the incident. He also argued the testimony was relevant to impeach T.B.'s statement that she was not using methamphetamine during the time period this offense arose.

The district court found Clinton's proposed testimony was not relevant to substantiate Brocks's testimony because it did not corroborate anything about whether T.B. used methamphetamine on January 6. The court also found Clinton's testimony was improper impeachment evidence on a collateral matter. The court stated, "I don't think the witness will offer anything else that will help the jury decide the issues they're supposed to decide."

Brocks claims the district court abused its discretion by ruling Clinton's testimony was not admissible as impeachment evidence. He contends that Clinton's testimony was not about a collateral matter but was relevant to a legitimate issue in the case. He points out that his specific intent was relevant to the issues of first-degree burglary and third-degree kidnapping. *See State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021) (burglary); *State v. Walker*, 856 N.W.2d 179, 185 (Iowa 2014) (kidnapping). Brocks testified that he did not intend to hurt T.B. but she was accidentally injured when he flung her aside because she attacked him for taking her drugs. He asserts that Clinton's testimony that T.B. was using

methamphetamine during the time period in question helped to corroborate his defense.

Under Iowa Rule of Evidence, 5.402, "[o]nly relevant evidence is admissible." *State v. Buelow*, 951 N.W.2d 879, 885 (Iowa 2020). "Evidence meets the test for relevance if '[i]t has any tendency to make a fact more or less probable than it would be without the evidence' and '[t]he fact is of consequence in determining the action.'" *Id.* (citing Iowa R. Evid. 5.401). "The test is 'whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence.'" *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988) (citation omitted). The corollary to the rule stating that evidence must be relevant to be admissible is that evidence that is not relevant is inadmissible. *See State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014) ("Irrelevant evidence is, of course, inadmissible evidence.").

The district court did not abuse its discretion by concluding that Clinton's proposed testimony was not relevant because he had no knowledge about whether T.B. used methamphetamine on January 6. Clinton testified that he used methamphetamine with T.B. but was vague about time periods. Referring to the date of January 6, he stated, "Without being exact, I would like to say I'd used prior to that and after." He was more certain about using methamphetamine with T.B. after Brocks was arrested on January 6. When counsel tried to narrow down the time period, Clinton could not remember specific dates. Clinton's proposed testimony did not have a "tendency to make a fact more or less probable than it would be without the evidence." *See* Iowa R. Evid. 5.401. Because the evidence

was not relevant, it was inadmissible and the court properly excluded it. *See*

*Putman*, 848 N.W.2d at 9.

Brocks also claims Clinton's testimony should have been admitted in order

to impeach T.B.'s credibility. On cross-examination, T.B. was questioned:

> Q. You have used methamphetamine at different times in your life, though; correct? A. Once in my life, yes.
> Q. Just once? A. Once in my lifetime, like in that period of time. Not recent at all.

Brocks asserts that T.B. untruthfully stated she had only used methamphetamine

once in her lifetime and Clinton's testimony was necessary to show she was not

credible.

An examination of T.B.'s testimony, however, shows she was stating there

was one period in her life when she used methamphetamine—not that she had

only used it one time. In this light, Clinton's proposed testimony was not in conflict

with T.B.'s testimony and did not challenge her credibility. T.B. testified she used

methamphetamine during a period of time and Clinton's testimony agrees that

there was a period of time when she used methamphetamine. The district court

noted there was evidence through T.B.'s own testimony to show she used

methamphetamine in the past and Clinton's proposed testimony did not add any

additional information for the jury. We conclude the court did not abuse its

discretion in ruling Clinton's proposed testimony was not admissible for

impeachment purposes.

## IV.    Ineffective Assistance

Brocks claims he received ineffective assistance because defense counsel

did not challenge the sufficiency of the evidence to support his convictions for first-

degree burglary and third-degree kidnapping. He states that T.B. was not at home when he entered her apartment and asserts that the apartment was not an occupied structure. He claims the issue should have been raised in a motion for judgment of acquittal.

The State responded that section 814.7 (Supp. 2019) prohibited Brocks from making a claim of ineffective assistance of counsel on direct appeal. Section 814.7 provides:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

Brocks claims section 814.7 violates his due process rights, his equal protection rights, and interferes with his right to the effective assistance of counsel. He asserts the statute improperly restricts the jurisdiction of appellate courts.

These issues were recently addressed by the Iowa Supreme Court in *State v. Treptow*, where the court denied the defendant's equal protection challenges to section 814.7. 960 N.W.2d 98, 106–07 (Iowa 2021). The court also found, "The right to the effective assistance of appellate counsel where direct appeal is available does not create an entitlement to direct appeal as a matter of right and a further entitlement to present any and all claims on direct appeal as a matter of right." *Id.* at 107. In addition, "There is no due process right to present claims of ineffective assistance of counsel on direct appeal." *Id.* at 108.

We conclude that based on section 814.7, Brocks cannot raise his claims of ineffective assistance of counsel in this direct appeal. Such claims must be

raised in postconviction relief proceedings. *See* Iowa Code § 814.7; *State v. Watson*, No. 20-1333, 2021 WL 2452049, at *3 (Iowa Ct. App. June 16, 2021).

Alternatively, Brocks asks the court to adopt a plain error rule. The Iowa Supreme Court has declined to adopt a plain error rule. *See State v. Martin*, 877 N.W.2d 859, 866 (Iowa 2016) ("[W]e have repeatedly declined 'to abandon our preservation of error rules in favor of a discretionary plain error rule.'" (citation omitted)). The Iowa Court of Appeals is not "at liberty to overturn Iowa Supreme Court precedent." *Nationwide Agribusiness Ins. Co. v. PGI Int'l*, 882 N.W.2d 512, 518 n.4 (Iowa Ct. App. 2016). We conclude the plain error rule should not be applied.

We affirm Brocks's convictions.

**AFFIRMED.**