# IN THE COURT OF APPEALS OF IOWA

No. 22-0158
Filed November 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**OWO ROBIN NYAL BOL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


        Defendant appeals his convictions for attempted murder, intimidation with a dangerous weapon, and willful injury causing serious injury. **AFFIRMED.**


        Christopher Kragnes, Sr. and Tiffany Kragnes, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Heard by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Owo Bol appeals his convictions for attempted murder, intimidation with a dangerous weapon, and willful injury causing serious injury. He argues the jury verdicts are not supported by sufficient evidence and the verdicts are inconsistent; the trial court erred in failing to sever his case from two of his co-defendants; the court erred in admitting the recorded statements of defendants whose cases had been severed; the court erred in admitting a detective's testimony as an expert on group crimes; and the court erred in failing to remove a juror or failing to determine whether the juror could remain impartial.

## I. Background Facts and Prior Proceedings

N.M., who was sixteen years old, lived with her mother, sister, eight-year-old brother, and two-year-old nephew, D.M., at a home in Des Moines. On March 1, 2021, she planned and held a surprise birthday party for her sister. By 10:00 p.m., the party had died down. N.M. was left at home with her brother and nephew. By 10:30 p.m., her brother was asleep in his room, and N.M. sat with her nephew while he watched cartoons in the living room. After N.M. decided it was time for both her and her nephew to retire for the evening, she went outside to retrieve her cell phone charger from her mother's vehicle parked in the driveway. D.M. remained on the couch, watching cartoons.

While N.M. was in the driveway, a vehicle stopped in front of the house. N.M. saw at least four people in the car, one who was wearing a black ski mask. N.M. inquired, "Who are you?" One of the occupants responded, "You know who this is, motherfucker," and shots rang out. Twenty to thirty shots were fired from the vehicle. N.M. dove into her mother's car, fearing that her brother or nephew

might be shot if she ran back into the home. The car eventually pulled away and N.M. ran to the front door of her home to make sure her brother and nephew were all right. But the door was jammed, and N.M. could not get in. She ran to a neighbor's house to call the police, but no one came to the door. She went to another neighbor's house who let her use a cell phone. N.M. then ran home. By that time, her brother had opened the door. N.M. found her nephew lying in the hallway, crying softly. He had been shot in the back of his head. N.M. managed to call 911. Two-year-old D.M. arrived at the hospital in critical condition. He survived but has permanent brain damage.

Law enforcement arrived on the scene shortly after the 911 call. With the benefit of a neighbor's porch camera, they identified the vehicle involved in the shooting as a dark-colored Nissan Rogue. Law enforcement quickly learned that a dark-colored Nissan Rogue had crashed in Dallas County. There were five occupants of that vehicle, including Bol and his co-defendants, Thon Bol[1] and Odol Othow. Officers at the scene of the crash observed spent nine-millimeter shell casings on the floor of the vehicle. Spent shell casings had also been placed inside an empty water bottle inside the vehicle. One of the occupants had a ski mask. The individuals in the crash, including Bol, were detained. And when police detained Bol, they found two firearms in the waistband of his clothing. A third gun was found in the vehicle. Analysis of those firearms and the spent casings recovered from the scene of the shooting determined that the casings were

---

[1] Thon Bol is Bol's brother. To distinguish the two brothers, Thon Bol will be referenced using both his first and last name.

consistent as being fired from the recovered firearms. Bol and the other occupants of the vehicle were transported back to Des Moines for further investigation.

Des Moines Police Department Detective Jeffery Shannon served as the lead detective. After Bol and the other occupants of the vehicle were brought to the station, Detective Shannon began the interviews, which were recorded. During Bol's interview, Bol conveyed that he was friends with everyone in the vehicle and that one of the individuals was his brother. Bol also told Detective Shannon that he was in Des Moines and with the others about the time of the shooting. A video taken the night of the shooting was recovered from Bol's phone which showed Bol sitting in the back of the Nissan Rogue with the others. In the video, they were brandishing the firearms recovered from Bol's waistband. Bol admitted the firearms were his and stated that no one shot the firearms that night. Bol was arrested and charged with attempted murder of N.M., attempted murder of B.C. and D.M., intimidation with a dangerous weapon with intent to injure or provoke fear, and willful injury.

Bol and the four other individuals in the vehicle were initially slated to be tried together as co-defendants. Before trial, the State requested a hearing on the admissibility of statements made by each of the defendants. The court determined the statements were not being offered to show the truth of the matter asserted, and determined portions of the recorded statements by some defendants to law enforcement were admissible. Bol moved to sever. He argued that severance was necessary because the five co-defendants had conflicting defenses. The court originally denied the motion to sever, then granted the motion to sever, and then, following the State's motion to reconsider, the court consolidated the trial for

Bol and two others. Bol filed a motion in limine, seeking to prohibit testimony from Detective Shannon on "gangs, complex crimes, and evasive answers." The court ruled that the detective could testify to complex criminal activity but not as to evasive answers or gangs. Bol was ultimately tried with two other co-defendants, Thon Bol and Othow.

N.M.'s 911 call was admitted as evidence and played for the jury. Defense counsel noticed a juror crying while the call was played. Defense counsel moved to remove the juror, or in the alternative, question the juror to determine whether she could remain impartial. The court declined the invitation to do either but advised counsel that the court would monitor the juror and reexamine the issue if any further issues with the juror presented themselves. No other issues were raised concerning this particular juror during trial, and the matter was not addressed again.

Jury trial commenced on July 26, 2021, and concluded on August 2. The State called sixteen witnesses, including Detective Shannon who testified to his knowledge and experience regarding "group crimes." Bol did not testify, but one of his co-defendants, Othow, testified in his own defense. The jury found Bol guilty of attempted murder of N.M., intimidation with a dangerous weapon, and willful injury causing serious injury. Bol was acquitted of the attempted murder of B.C. and D.M. Following the verdict, Bol filed a motion for a new trial and a motion in arrest of judgment. He argued the verdict was contrary to law and evidence. The court denied his motions and sentenced Bol to a total term of imprisonment not to

exceed thirty-five years, with Bol eligible for parole after twenty-two and a half years.[2]  Bol now appeals.

## II.  Analysis

### a.  Sufficiency of the Evidence

Bol argues that there was insufficient evidence presented at trial to support the verdicts.[3]  Sufficiency of the evidence is reviewed for correction of errors at law.  *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022).  "In conducting that review, we are highly deferential to the jury's verdict.  The jury's verdict binds this court if the verdict is supported by substantial evidence."  *Id.*  Evidence is substantial when it is sufficient to convince a rational trier of fact of guilt beyond a reasonable doubt.  *Id.*  Evidence is viewed in the light most favorable to the State, but evidence that raises only suspicion, speculation, or conjecture is not substantial.  *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016).

There is no dispute that a shooting occurred at the home on March 1, 2021, or that D.M. was shot and sustained serious injury.  But, Bol argues that the evidence presented at trial is insufficient to show he had anything to do with the shooting.  He states, "merely being together does not a crime create."  In essence, Bol asserts that although he was found in a vehicle matching the description of the vehicle involved in the shooting; in possession of two of the firearms consistent as being used in the shooting; surrounded by spent casings from those firearms;

---

[2] Bol's sentences for willful injury and intimidation with a dangerous weapon were run concurrently with each other and consecutively with his sentence for attempted murder.

[3] Bol's brief captions this argument as a "weight of the evidence" challenge, but we address the arguments raised in the body of the brief concerning a sufficiency challenge.

featured in a video brandishing those firearms taken after the shooting; with Thon Bol, who was in possession of a black ski mask which N.M. described one of the shooters wearing; in the vehicle with a third gun which was also consistent as being used in the shooting; such does not rise to the level of substantial evidence for a rational trier of fact to find him guilty beyond a reasonable doubt. We disagree.

Bol also argues that the State failed to show that there had been a conspiracy between him and his co-defendants. But Bol was not convicted of conspiracy.[4] He also argues that there was no direct evidence presented to put him in the car at the time of the shooting, but "direct evidence of guilt is not required . . . . A defendant may be convicted solely on circumstantial evidence if it is sufficiently compelling to convince a . . . jury of the defendant's guilt beyond a reasonable doubt." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). We determine a rational trier of fact had sufficient evidence to convict Bol of attempted murder of N.M., intimidation with a dangerous weapon, and willful injury causing serious injury.

### b. Inconsistent Verdicts

We turn to Bol's argument that the verdicts returned by the jury were inconsistent. "The consequence of a potentially inconsistent jury verdict is a question of law, and accordingly, our review is de novo." *State v. Merrett*, 842 N.W.2d 266, 272–73 (Iowa 2014). When examining jury verdicts for inconsistency we look to see if "the verdict is so logically and legally inconsistent as to be irreconcilable within the context of the case." *State v. Fintel*, 689 N.W.2d 95, 101

---

[4] Bol was not charged with conspiracy.

(Iowa 2004). In addition, "Our review of a jury's verdicts for consistency is highly deferential; verdicts are to be liberally construed to give effect to the intention of the jury and to harmonize the verdicts if it is possible to do so." *State v. Goodon*, No. 19-0174, 2020 WL 2060301, at *3 (Iowa Ct. App. Apr. 29, 2020). To analyze the consistency of jury verdicts we look to the pleadings and the jury instructions. *Id.*

Bol specifically points to the jury's "not guilty" finding on Count II, attempted murder of B.C. and D.M., and the jury's "guilty" finding on Count IV, willful injury causing serious injury. He argues that because these are both specific intent crimes, the verdicts were inconsistent. How could the jury fail to find specific intent in Count II, but find it in Count IV? We determine the answer is contained in a reading of the jury instructions.

Jury Instruction 25, on attempted murder, read: "When the Defendants, or someone they aided and abetted acted, they specifically intended to cause the death of D.M. . . . and/or B.C." Jury Instruction 30, willful injury, read: "The Defendants or someone they aided and abetted specifically intended to cause a serious injury to D.M. . . . or any of the occupants of the home." A careful reading of these jury instructions, in addition to questions submitted by the jury at trial reveals a lack of an inconsistent jury verdict. During deliberation, the jury asked the court, "Instruction 25, charge 2, element 3. Does the wording mean they specifically knew [B.C.] and [D.M.] were in the house? Did they have to know specifically [B.C.] and [D.M.] were in the house?"

It is plausible, even likely, that the jury determined Bol, or someone he aided and abetted, intended to injure someone in the home but they did not intend to

specifically injure B.C. or D.M. Given our mandate concerning the high degree of deference afforded to a jury verdict, we conclude the verdicts are not inconsistent.

### c. Motion to Sever

Bol argues the court erred by denying his motion to sever after his case had been consolidated with those of Thon Bol and Othow. The trial court's decision to deny severance is reviewed for abuse of discretion. *State v. Belieu*, 288 N.W.2d 895, 900 (Iowa 1980). "To establish an abuse of discretion, the defendant must show sufficient prejudice to constitute denial of a fair trial." *Id.*

Under the Iowa Rules of Criminal Procedure, "A joint trial is permissible if in the discretion of the court a joint trial will not result in prejudice to one or more of the parties; otherwise, the defendants shall be tried separately." *Id.* (internal quotation marks and citation omitted); *see* Iowa R. Crim. P. 2.6(4)(b). Our supreme court has found that severance is warranted if:

> (1) if admission of evidence in a joint trial would have been inadmissible and prejudicial if a defendant was tried alone, (2) if a joint trial prevents one defendant from presenting exculpatory testimony of a codefendant, (3) if consolidation will produce a trial of such complexity and length that the jury will be unable to effectively compartmentalize the evidence against each defendant, [or] (4) if defenses presented by different defendants conflict to the point of being irreconcilable and mutually exclusive.

*State v. Williams*, 525 N.W.2d 847, 849 (Iowa 1994). Bol primarily argues severance was necessary as he and Othow presented conflicting defense theories, pointing to the fourth *Williams* factor. But he also argues factors (1) and (3) were fulfilled.

It is important to note:

> It is a defendant's burden to establish that separate trials are necessary to avoid prejudice that would deny him a fair trial. In

meeting this burden, we have repeatedly stated that a defendant must show more than the attempt by one defendant to exculpate himself or herself by incriminating the other defendant. A defendant must show that he was unfairly prejudiced by the joint trial.

*State v. Clark*, 464 N.W.2d 861, 864 (Iowa 1991) (internal citations omitted). For such prejudice to occur "the defenses must be more than merely antagonistic, they must conflict to the point of being irreconcilable and mutually exclusive." *State v. Leutfaimany*, 585 N.W.2d 200, 203 (Iowa 1998). For this to be the case, "the jury, in order to believe the core testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of a codefendant." *Id.*

Bol fails to show that he was unfairly prejudiced by the joint trial. His argument begins with the fact that Othow chose to testify at trial. Othow offered testimony that conflicted with other accounts of what happened. Othow stated that he was sitting in the middle backseat of the vehicle, but law enforcement testified that Bol was sitting in the middle backseat. He also testified that Bol had a permit to have guns and that they had been shooting at a range that day. Bol claims that Othow "essentially pointed the finger at Bol saying he was in the car while they were off doing whatever they were doing."[5]

Even considering these assertions, the record does not reflect two defenses that are "irreconcilable and mutually exclusive." *See id.* Asked at trial about the shooting, Othow maintained he was unaware of it until he was questioned by police. He was asked:

> Q. You were with them when you shot up the house? Yes or no. A. I never knew about a house getting shot up, sir, until I got into

---

[5] Othow testified at trial that he had been dropped off in Des Moines before the shooting occurred, ostensibly to meet a girl, and he was not picked up until afterward.

a car accident. Like I said, I was brought to the investigation room, questioned about a shooting. That's the first time I heard about a shooting.

And later:

> Q. So did they tell you what they were doing after they dropped you off? A. No. I never knew what they were going to do.
> Q. So you just came with them, not knowing what they were going to do, to Des Moines? . . . . A. As far as I was concerned, I thought they was going to visit their auntie whose family member had just passed away in Africa.

Even as he was asked repeatedly if he was in the car while "they" shot up the house, Othow continued to maintain that he knew nothing about a shooting. At no time did Othow "point the finger" at Bol, despite several opportunities to do so. Any conflict between their defenses, such as which seat in the car they were sitting in, does not rise to the level of "irreconcilable and mutually exclusive." *See id.* To the extent that there are differences in the defenses of Bol and Othow, they are, at most, "merely antagonistic." *See id.* We determine that the court committed no abuse of discretion in denying the request to sever Bol's case from that of his two co-defendants.

### d. Admission of Recorded Statements

Bol argues that the court erred in admitting the recorded statements of two defendants that had been severed from this case. He argues that these statements are hearsay, not subject to any exception, and therefore inadmissible. The challenged statements were made to law enforcement during interviews after the car crash.

Although evidentiary rulings are normally reviewed for an abuse of discretion, we review hearsay for correction of errors at law. *State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020).

Before the individuals who made these statements were severed from trial, the court had ruled their statements admissible as those of a party opponent. But after severance, the court revisited this decision in light of the change of circumstances. The State argued that the recorded statements were made to conceal the group's involvement in the shooting, and therefore, they were statements made in furtherance of an ongoing conspiracy admissible under Iowa Rule of Evidence 5.801(d)(2)(E). The State also argued that the statements were non-hearsay, as they were not offered to prove the truth of the matter asserted. Instead, they were offered "because the statements are false, which establishes consciousness of guilt."

Bol argues that the State failed to show there was a conspiracy. However, the court ultimately admitted the statements as non-hearsay, concluding the statements were not being offered to prove the truth of the matter asserted:

> The court, after further research and investigation, has come to a conclusion, in fact, those statements, quite frankly, as argued by the State, are not hearsay . . . for the purpose that they are being offered here today. In other words, they're not being offered for the truth of the matter asserted.

The court cited several cases to support this decision, including *State v. Crowley*, 309 N.W.2d 523 (Iowa Ct. App. 1981). In *Crowley*, the court ruled on the admission of a false out-of-court statement:

> The claim that the declaration by defendant is not an admission because it is exculpatory assumes that it otherwise is excludable from evidence as hearsay. It is not. . . . The statement

in the present case clearly was not offered by the state to prove the truth of the fact asserted . . . . Obviously, the state was trying to show precisely the opposite that defendant was not telling the truth . . . . This evidence was relevant and material on the theory that consciousness of guilt may be inferred from attempted evasion, palpable falsehood, or suppression of the true facts by one suspected of crime.

309 N.W.2d at 524 (internal citation omitted).  Bol failed to address this basis for admission in his brief beyond a passing mention.  He instead focused on whether the State had shown there was a conspiracy, which was not the basis for the court's decision.

Because the recorded statements were not offered to show the truth of the matter asserted, the court did not err in admitting them.  The statements were non-hearsay.

### e.  Detective Shannon's Testimony on Group Crimes

Bol argues that the testimony of Detective Shannon at trial breached the court's previous ruling which disallowed discussion of gang activity by talking about his experience with cases involving multiple suspects.

Bol filed a motion in limine with the court asking that the State be prohibited from introducing evidence of "complex crimes" or "complex criminal investigations involving multiple co-defendants."  In Bol's view, this would violate the court's previous prohibition on testimony about gang activity.  The court disagreed: "[c]omplex criminal activity can take place outside the involvement of a gang."  The court ultimately ruled this testimony admissible.  At trial, Detective Shannon never used the phrase, "complex crimes," but he did testify to "cases involving multiple suspects."

Because the State argues Bol failed to preserve error on this issue, we begin our discussion there. When a trial court rules on a motion in limine, "if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial." *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). The State's argument rests on the idea that because Detective Shannon did not use the words, "complex crimes," error was not preserved. We choose to address the merits of Bol's argument.

Trial court rulings on the admissibility of evidence and the scope of expert testimony are reviewed for abuse of discretion. *State v. Stendrup*, 983 N.W.2d 231, 238 (Iowa 2022). Bol relies on the court's prior ruling barring gang evidence and the ruling in *State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995), where our supreme court found gang evidence "inherently prejudicial."

The district court ruled that testimony on "complex criminal investigations involving multiple co-defendants" was not equal to testimony on gangs. Detective Shannon did not speak on gangs. He never used the word gang, nor did he use "euphemisms" for gang activity as Bol contends. The specific language challenged by Bol is Shannon's testimony that in certain investigations, activities occur with groups, and "sometimes you see strength in numbers." He also testified in "cases with multiple suspects, oftentimes you'll see different roles or responsibilities amongst the group." He also testified to his work on cases with multiple suspects and how he learned they operate within a group.

We conclude that his testimony did not violate the ruling made by the court:

> The Defendant argues that the testimony of "complex crimes" is an attempt by the State to skirt the court's previous ruling regarding gang activity. . . . However, the court does not believe that reference to "complex criminal activity" is equivalent to gang affiliation. Complex criminal activity can take place outside the involvement of a gang. As such, the court does not find Defendant's argument on this issue compelling.

Testimony on crimes involving multiple suspects is different from testimony on gang affiliation, and our precedent establishes that where a defendant is not painted as a gang member, there is no prejudice. *See State v. Thomas*, No. 03-1642, 2005 WL 1224585, at *3 (Iowa Ct. App. May 25, 2005), *State v. Dixon*, No. 00-829, 2001 WL 1450991, at *4 (Iowa Ct. App. Nov. 16, 2001), *State v. James*, No. 00--831, 2001 WL 803814, at *4 (Iowa Ct. App. July 18, 2001). Even where minimal gang evidence has been presented, we have found no prejudice. *State v. Caples*, 857 N.W.2d 641, 647–48 (Iowa Ct. App. 2014). Here, there was no mention of gang activity or gang affiliation. Accordingly, we find no abuse of discretion in the court allowing the detective's testimony.

And even if some of Officer Shannon's testimony should have been limited, Bol cannot demonstrate prejudice, given the other evidence offered by the State and the limited testimony of Officer Shannon that discussed groups or multiple suspects. *See State v. Boehmer*, 967 N.W.2d 191, 197 (Iowa Ct. App. 2021) (holding that any error in admission of the challenged evidence would be harmless under the circumstances); *see also State v. Holland*, 485 N.W.2d 652, 656 (Iowa 1992) (finding error was harmless due to overwhelming evidence).

### f. Juror Bias

Bol argues that the court erred in failing to remove or question Juror 31, who was seen crying when the 911 call by N.M. was played. "We review a denial

of a motion for a new trial based upon juror misconduct or juror bias for an abuse of discretion." *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). In this case, Bol does not allege that the juror engaged in misconduct but that the juror's tears revealed that this juror was biased.

A juror can be biased without engaging in misconduct. *Id.* at 236. Bias can be actual or implied, and "[i]mplied bias arises when the relationship of a prospective juror to a case is so troublesome that the law presumes a juror would not be impartial." *Id.* Usually voir dire is used to "smoke out" potential juror bias. *Id.* at 237.

On the second day of trial, the 911 call made by N.M. on the night of the shooting, after she found her nephew had been shot in the head, was played for the jury. During the playing of that call, defense counsel informed the court that Juror 31 was crying. The defense described this juror as "sobbing uncontrollably," and although the State disagreed with that characterization, the parties agreed that the juror had been crying. The defendants moved to remove the juror, or for the court to conduct additional questioning of the juror to confirm her impartiality.

The court declined and instead ruled that the court would "continue to observe, and if there are further reasons to believe that we need to question this individual juror, that issue can be readdressed." The court explained its decision by citing the fact that extensive time had been spent on voir dire, and this juror had confirmed under oath that she would not make decisions based on emotion.

Serious questions of bias can arise when a juror fails to tell the truth during voir dire, *see id.*, but here, Bol has made no such claim. Instead, he relies solely on the juror's emotional reaction to the 911 call. However, the court found her oath

not to make decisions based on emotion compelling. We give this finding weight. *See id.* at 238. A juror expressing empathy for the victims of a crime does not merit disqualification for bias: "If we disqualified jurors because they empathized with the family of crime victims, we would have no jurors." *Id.* at 239. The juror's single display of emotion, which was not repeated, is not an example of juror bias. We find no abuse of discretion on this point.

## III. Conclusion

Because sufficient evidence exists to support the verdicts, the jury verdicts are not inconsistent, there was no abuse of discretion in refusing to sever Bol's case, statements made by defendants whose cases were severed from Bol's were not hearsay, there was no abuse of discretion in admitting evidence about complex criminal investigations, and no juror bias was established, we affirm.

**AFFIRMED.**